F I L E D
United States Court of Appeals
Tenth Circuit

MAY 30 1997

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

LELAND REED,

Defendant-Appellant.

No. 96-2082

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CR-95-45-LH)

---

Barbara A. Mandel, Assistant Federal Public Defender (William D. Fry, Assistant Federal Public Defender, on the briefs), Las Cruces, New Mexico, for Defendant-Appellant.

Judith A. Patton, Assistant U.S. Attorney (John J. Kelly, United States Attorney, with her on the brief), Las Cruces, New Mexico, for Plaintiff-Appellee.

---

Before PORFILIO, LOGAN and EBEL, Circuit Judges.

---

LOGAN, Circuit Judge.

---

Defendant Leland Reed appeals his conviction by a jury for being a felon who

knowingly possessed a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). In

his opening statement defense counsel argued that defendant did not "knowingly" possess a firearm because he thought he was not prohibited from possessing an inoperable shotgun. Defendant asserts the district court denied him a fair trial by rejecting this defense theory and excluding supporting evidence after defendant committed to this defense strategy during trial. Because the statutory crime does not require proof defendant knew he was violating the law, a mistaken belief that a broken shotgun is not a statutory firearm is not a viable defense, and we affirm. We also reject defendant's assertion that the court erred in refusing to give him a two-level downward departure for acceptance of responsibility.

I

Before trial defendant proposed a jury instruction that his good faith belief that he was not prohibited from possessing a broken gun was a complete defense because it negated the "knowingly possessed" element of §§ 922(g)(1) and 924 (a)(2). He also argued that evidence about whether the gun was broken was relevant to whether defendant knew that the object he possessed was a firearm. The district court made no ruling on the government's objection at that point, noting that "we'll have to hear the evidence before some of these things become important." IV R. 18.

In opening statements the jury heard defendant's version of how he came into possession of the shotgun and his theory of defense. Defendant's attorney told the jury they would hear evidence that defendant first saw the shotgun when he noticed that two

- 2 -

boys fighting in the park across the street from his house had the gun, and he took it away from them; defendant determined that the gun was broken: the sleeve of the pump protruded, the chambering mechanism was damaged, and there was not a firing pin in the breech; he decided that although the gun might have functioned as a firearm at one point, it no longer worked as a firearm so he took it home and stored it in his garage.

Defendant's attorney then told the jury that Lonnie Smith, a welding instructor, would testify that defendant discussed with him plans to make a lamp stand using the shotgun, and that defendant agreed to sell the shotgun to Robert Sandoval, an undercover agent, because the gun was worthless except as a part of defendant's welding project. The jury was told the defense would be that "he thought the shotgun was broken, he thought that it did not function as a firearm. . . . [A]s a result, he did not knowingly possess a firearm. And in that regard he's not guilty." Id. at 83-84. The government did not object to this presentation of defendant's theory in his opening statement.

The government then called Sandoval as its first witness. Sandoval testified he went to defendant's home with an acquaintance to buy a firearm. There defendant pulled the gun from under a bed and told him that it needed repair, but demonstrated to Sandoval that even without repair the gun worked. After bargaining over the price they agreed upon $30, which Sandoval paid.

The government then presented testimony by Glenn Alexander,[1] the detective who received the gun from Sandoval and logged it into the evidence room. He stated the shotgun needed repair at that time and that he had adjusted the slide bar. Although the breech bolt was off the rail, he was able to chamber it a couple of times and the action worked and the firing pin fell. On cross-examination, however, Alexander admitted that at a state preliminary hearing he had tried the action of the shotgun and it did not work. The district court then sustained the government's objection to defense counsel's further questioning about whether the gun worked. Defense counsel argued that if he was not allowed to ask about the functioning of the shotgun he would not be able to present his defense. He asserted that knowing possession of a firearm required proof the defendant knew the instrument was a firearm, not simply proof that it was a firearm, and that evidence defendant believed the gun was broken and nonfunctioning "junk" would demonstrate he did not knowingly possess a firearm. After a lengthy discussion of case law and evidence the district court ruled that defendant's belief that the gun could not operate was not a defense.

The government then called Manuel Olmos, a Bureau of Alcohol, Tobacco and Firearms agent, who testified that he test fired the shotgun by reinserting a prong and

---

[1] In its brief the government explained that although the record indicates "Lynn" Alexander, the detective's name is Glenn and he speaks with an accent. See Brief of Appellee at 4.

adjusting the slide before charging it. When he was on the stand, however, Olmos could not demonstrate how the firearm would work.

At the close of the government's case in chief, the defense moved for a mistrial, asserting defendant was irretrievably prejudiced by the court's refusal to allow evidence of defendant's knowledge about whether the gun worked. Defense counsel asserted he had committed in his opening statement to a theory that defendant lacked the necessary mens rea, and had then cross-examined agent Sandoval on this theory. Counsel contended that he had no realistic alternative strategy and the court's ruling was therefore prejudicial. The district court denied the motion for a mistrial.

Defendant then presented the testimony of defendant's counsel in a related state court case, who testified that the firearm was inoperable at the state preliminary hearing. Defendant also called Willie Gene Wrighter, who testified that someone other than defendant sold the gun to Sandoval.

Defendant took the stand and testified he concluded that the gun was not a firearm because it was broken, and he stored it as junk. After he repeated that he did not view it as a firearm, the district court sustained the government's objection. Defendant then explained that he had planned to incorporate the broken shotgun into a lamp table.[2] On cross-examination, defendant admitted that from the "get-go" he "knew it was a shotgun."

---

[2] The district court did not allow defense counsel to introduce defendant's drawings concerning the design of the table with the shotgun.

V R. 253.  On redirect defendant testified that he did not believe it was a firearm because he thought a firearm had "to be able to do bodily harm to a person."  Id. at 259-60.

Defendant then proffered testimony by the two witnesses he had mentioned in his opening.  Lonnie Smith testified that defendant had planned to use the old gun as a lamp stand.  Tim Kling, the defense investigator, testified that he had examined the gun and found it was workable only after about fifteen to twenty minutes of manipulating it.

Defense counsel requested that the court instruct the jury on why he did not follow through on the defense theory presented in his opening statement; the district court refused but allowed defense counsel to address this in closing argument.  The district court denied defendant's "good faith" instruction and theory of the case instruction as well as his renewed motion for a mistrial.

II

18 U.S.C. § 922(g)(1) states:  "It shall be unlawful for any person-- (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."  Although § 922(g)(1) does not contain a knowledge requirement, the relevant penalty provision, 18 U.S.C. § 924(a)(2), provides that "[w]hoever knowingly violates subsection . . . (g) . . . of section 922 shall be fined as provided in this title, imprisoned not more than ten years, or

both." The knowledge element of § 922(g) and § 924 requires proof that a defendant "knew the particular characteristics that made his [gun] a statutory firearm." United States v. Mains, 33 F.3d 1222, 1229 (10th Cir. 1994); cf. Staples v. United States, 511 U.S. 600, 618-19 (1994) (although statute did not explicitly include "knowingly" element, conviction for possession of an unregistered firearm under 26 U.S.C. § 5861(d), based on defendant's possession of a machine gun, required that government prove defendant knew of the features of his gun that brought it within the scope of that act).[3] 18 U.S.C. § 921(3) defines "firearm" for purposes of § 922(g): "The term 'firearm' means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device."

At trial defendant argued that he was entitled to present a "good faith" defense that he did not know the statute prohibited him from possessing an inoperable shotgun. But we have interpreted § 922(g)(1) to require only that defendant knew of the characteristics that made the gun a statutory firearm; the government does not have to prove defendant knew he was violating the law. See Mains, 33 F.3d at 1229 (§ 922(g)(1) is not a specific intent crime). Defendant's proposed jury instructions state an "ignorance of the law" defense, a defense which is "easily rejected." United States v. Capps, 77 F.3d 350, 353

---

[3] In Staples the Court determined that this knowledge requirement meant that the government had to prove that the defendant knew his weapon could shoot or be readily restored to shooting automatically. See Staples, 114 S. Ct. at 1804; 26 U.S.C. § 5845(b).

- 7 -

(10th Cir.) (defendant's good faith belief that felonies were not predicate convictions for § 922(g)(1) not a viable defense), cert. denied, 116 S. Ct. 2568 (1996). The district court properly excluded the "good faith" jury instruction suggesting that ignorance of the law was a defense, and the corresponding evidence.

On appeal, defendant has changed his approach. He argues first that he did not have knowledge of facts which would bring his gun within the definition of a statutory firearm. Defendant asserts the court erroneously excluded evidence that he did not think the gun could expel a projectile or readily be converted to do so. Our review of the record, however, reveals that the district court allowed testimony about whether the gun could expel a projectile and whether it could be repaired.[4] Defendant next argues that he thought the gun was so altered that it was no longer designed as a weapon. Cf. United States v. Yannott, 42 F.3d 999, 1006 (6th Cir. 1994) (gun inoperable due to broken firing pin still designed or readily converted to expel projectile so still firearm under § 922), cert. denied, 115 S. Ct. 1172 (1995); United States v. Ruiz, 986 F.2d 905, 910 (5th Cir.), cert. denied, 510 U.S. 848 (1993). Yet his proposed instructions did not raise the lack of knowledge defense on the "is designed to" or "may readily be converted" statutory

---

[4] Defendant and others testified that the gun would not expel a projectile. Additional evidence on this point would be properly excluded as cumulative. Also, when the government produced evidence that the gun could be repaired (e.g., "easily converted") to expel a projectile, see IV R. 91-93 (Sandoval); V R. 143-48 (Alexander), defendant was allowed to cross-examine Sandoval before the government's objection to his question to Alexander on the issue was sustained. Further, even the proffered testimony of the defense's investigator indicated he was able to make the gun work.

alternatives, see Defendant's Requested Jury Instructions, I R. tab 68 at "L," tab 77 at "Q."

The indictment charged defendant with violating § 922(g)--the felon in possession statute--and the jury instructions included each of the alternative definitions of "firearm" in § 921(3). Thus, the government needed to prove only that defendant knew the shotgun he admittedly possessed met at least one of these definitions, and that is what government counsel argued to the jury. VI R. 314-15. The record includes defendant's testimony that he knew the gun was a shotgun. The jury could certainly infer that defendant knew the gun was "designed to" expel a projectile, or that it was the "frame" of such a weapon. Defendant proffered no evidence that he lacked knowledge that the item he possessed consisted of, at the very least, a shotgun frame, which is a statutory firearm. We discern no error in the district court's evidentiary ruling.

Finally, although there was a short colloquy raising the viability of a good faith defense just before the trial commenced, the court postponed a decision on the issue. Defendant never pressed for or received a pretrial ruling on whether he would be allowed to present the good faith defense; thus, he cannot complain he suffered prejudice when the court decided during trial that he could not offer evidence to support that theory.

III

Defendant argues that he should have been given a two-level downward departure for acceptance of responsibility under USSG § 3E1.1. A defendant has the burden to

establish an entitlement to this reduction, and we will not disturb a district court's determination not to award it absent clear error. See United States v. Gassaway, 81 F.3d 920, 922 (10th Cir. 1996).

A defendant who requires the government to make its proof by going to trial generally will not be allowed a two-level departure for acceptance of responsibility. United States v. Portillo-Valenzuela, 20 F.3d 393, 394 (10th Cir.), cert. denied, 115 S. Ct. 227 ( 1994). As defendant points out, however, "a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g. to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct)." USSG § 3E1.1 comment. (n.2). Defendant did not challenge the constitutionality of the statute. His good faith defense demonstrated that he did not accept responsibility for his conduct. We find no reversible error in the district court's refusal to give defendant a two-level reduction for acceptance of responsibility.

AFFIRMED.

<u>United States v. Reed</u>, No. 96-2082


EBEL, Circuit Judge, dissenting.

I respectfully dissent from the majority opinion in this case because I believe the district court erred in refusing to allow defendant adequately to argue or prove lack of knowledge that the gun possessed the physical characteristics which constitute a statutory "firearm." Although the majority opinion characterizes defendant's attempted defense as a "good faith" defense, I believe the defendant was also trying to establish his lack of knowledge that the firearm possessed the required characteristics to constitute a statutory firearm. I do not quarrel with the conclusion that it is not an adequate defense that the defendant is unaware of the <u>law</u>, but I do believe the government must establish, under <u>Staples v. United States</u>, 511 U.S. 600 (1994), that the defendant had <u>knowledge of the physical characteristics</u> of the gun that the law uses to define what constitutes a statutory firearm. Thus, if the defendant knew that the gun was capable of firing projectiles, he would have adequate <u>mens rea</u> to be convicted even if he did not know that the <u>law defined</u> a statutory firearm as one capable of firing projectiles and even though he believed in good faith that he was not violating the <u>law</u>. However, he could not be convicted if he did not know that his gun either "will or is designed to or may readily be converted to expel a projectile by the action of an explosive." I do not read the majority opinion as disagreeing with this standard. Thus, my difference with the majority is really in the application of that standard to the facts of this case.

Here I believe the district court ruled that defendant's lack of knowledge of the characteristics of the gun was not material, and I think the court excluded important evidence that tended to establish the defendant's lack of such knowledge. For example, defendant sought to elaborate upon his view that the gun could not function as a weapon and could not readily be made to function as a weapon, and that it was useful only as a lamp. Defendant further sought to have Lonnie Smith, his welding instructor at the local community college, corroborate this testimony. Additionally, defendant proffered testimony from Tim Kling, a former police officer familiar with firearms, regarding the state of defendant's gun. Kling would have testified that a working gun such as that possessed by defendant would sell for between $150 and $250, whereas defendant sold the gun to Sandoval for $22. This evidence would have provided important support for defendant's contention that he did not know he possessed a "firearm" as defined under the statute. Yet, the district court excluded this evidence.

I do not believe this excluded evidence can properly be characterized as "cumulative." Although admittedly defendant did put on some evidence of his lack of knowledge, the proffered testimony of Smith and Kling was the only independent evidence that could have corroborated defendant's contention that he did not know the gun possessed the physical characteristics of the statutory "firearm."

I admit to some uncertainty about whether defendant's conviction could be upheld under the "design" prong of the statutory definition of a firearm in 18 U.S.C. § 921(a)(3),

which defines a firearm as "any weapon . . . which will <u>or is designed to</u> or may readily be converted to expel a projectile by the action of an explosive." (Emphasis added.) There is no doubt that the evidence in this case was sufficient to establish that the weapon possessed by defendant was "designed to . . . expel a projectile by the action of an explosive." Further, defendant did not proffer any evidence to dispute the fact that the weapon was so designed. He did argue that he planned, at some future date, to "redesign" the weapon by converting it into a lamp, at which time it would no longer be designed to expel a projectile. However, that redesign never occurred.

However, just like defendant did not focus upon the "design" definition of a firearm, neither did the government. Although the indictment included the "design" prong in the definition of firearm submitted to the jury, the government's case was based largely on the other two prongs of the statutory definition. <u>See</u> IV R.O.A. at 77 (opening statement); <u>Id.</u> at 93 (testimony of Robert Sandoval); VI R.O.A. at 311, 315 (closing argument). Because this case was essentially tried on a statutory definition that the weapon was either capable of expelling a projectile or capable of readily being converted to expel a projectile, and because defendant was deprived of a fair opportunity to argue and prove his lack of knowledge of those particular characteristics of the weapon he possessed, I believe his conviction must be REVERSED and REMANDED for a new trial.