**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 9, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

      v.

BENJAMIN RYAN SPENCE,

      Defendant - Appellant.

No. 12-5112

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. 4:11-CR-00099-GKF-1)**

---

William Patrick Widell, Assistant Federal Defender (Julia L. O'Connell, Federal Public Defender, with him on the brief), Tulsa, Oklahoma, for Defendant - Appellant.

Leena Alam, Assistant United States Attorney (Danny C. Williams, Sr., United States Attorney, Northern District of Oklahoma, with her on the brief), Tulsa, Oklahoma, for Plaintiff - Appellee.

---

Before **HARTZ**, **McKAY**, and **MATHESON**, Circuit Judges.

---

**McKAY**, Circuit Judge.

Following a jury trial, Defendant was convicted of possessing a firearm and ammunition after former conviction of a felony, in violation of 18 U.S.C. § 922(g)(1) and § 924(e)(1). He was sentenced to 180 months' imprisonment

followed by four years of supervised release. This appeal followed. Defendant argues the district court erred in excluding the proposed testimony of his biological father that Defendant had never before seen the gun he possessed, had never seen it fired, and possessed it only for a short period of time.

**I.**

Defendant was arrested at the Economy Inn in Tulsa, Oklahoma, after two Tulsa Police officers observed him and three others in a hotel room with drug paraphernalia. The officers, who had been patrolling the Economy Inn, had stopped one of the other occupants as he was exiting the room because they believed the sheath knife he was carrying was larger than permitted by Oklahoma law. As they did so, the officers were able to see into the hotel room through the open door and noticed hypodermic needles and small plastic baggies with white residue on the nightstand. One of the officers then entered the room and saw Defendant sitting on the bed near the nightstand. Because Defendant was closest to the paraphernalia, the officer placed handcuffs on him and detained him. He then ran a record check on Defendant, as well as the others, and discovered Defendant had four outstanding misdemeanor warrants. Based on this information, the officer placed Defendant under arrest. During a search incident to arrest, the officer found a loaded .380 caliber pistol in Defendant's right front pocket. The second officer heard Defendant say "that the firearm belonged to his deceased father." (R. Vol. III at 67.)

Defendant was ultimately charged in a superseding indictment with possessing a firearm and ammunition after a felony conviction, in violation of 18 U.S.C. § 922(g)(1) and § 924(e)(1).  Before trial, the government filed a motion in limine in which it sought to exclude proposed testimony of Defendant's biological father[1] that Defendant intended to offer in support of a fleeting possession defense.  During a hearing on the motion, the district court concluded the proffered testimony did not satisfy the elements of fleeting possession and therefore granted the government's motion.[2]  Defendant then asserted an alternative basis for introducing his father's testimony:  his father's testimony was relevant to whether Defendant knowingly possessed a firearm; that is, whether Defendant knew the handgun he possessed had characteristics rendering

---

[1] The proffered testimony was that of Defendant's biological father, Mr. Beets.  Defendant had been legally adopted by Mr. Spence when he was younger, but had resumed a relationship with his biological father.  This caused some confusion in the district court.  (*See* R. Vol. III at 113.)  Throughout this opinion, we use "father" to refer to Defendant's biological father, Mr. Beets.

[2] Defendant's father's proffered testimony in support of this defense was that he had spent the day—Father's Day—with Defendant and, at the end of their day together, taken Defendant to the Economy Inn to meet Defendant's girlfriend. He then "spent a few moments in the hotel with the two of them.  Used the restroom.  He had the firearm in his possession at that point. . . . [W]hile using the restroom he set the firearm on the ground beside the toilet."  (R. Vol. III at 112.)  While in the restroom, Defendant's father received a telephone call. Because "[h]e's a locksmith, and is on call 24/7[,] . . . [h]e rushed out to the call. . . . [H]e was about four miles down the road before he realized that he had left the firearm in the hotel, called his son, and understood that more people were coming to the hotel later and suggested that [Defendant] keep hold of it for him." (*Id.*)

-3-

it a statutory firearm.  Specifically, Defendant made the following proffer to the district court:

> The father's proposed testimony would be that the son never saw [the gun] fired, never possessed it prior to that day, only possessed it—certainly decided[ly] not momentarily but not much longer than that anyway, a matter of an hour or something like that possibly, I'm not sure exactly, but maybe less.[3]

(R. Vol. III at 118-19.)  Defendant explained that his "argument might be that [he] didn't have time to examine the firearm and determine that it was a . . . firearm as that term is defined by statute."  (R. Vol. III at 119.)  After hearing argument on this issue, the district court concluded Defendant's father's proposed testimony was not relevant to the knowledge element of the offense.  It further concluded, "It seems . . . this is an attempt to get the biological father to testify . . . that this was only a temporary type of possession as opposed to the issue of whether or not the defendant knew it was actually a firearm."  (R. Vol. III at 125.)  The district court therefore granted the government's motion to exclude the proposed testimony.

The case subsequently proceeded to trial.  During trial, an ATF agent

---

[3] This is the most complete proffer of Defendant's father's proposed testimony regarding the circumstances Defendant alleged were relevant to his knowledge of the gun's characteristics.  He alternatively stated his father would testify "that [Defendant] hadn't possessed the firearm before, hadn't seen the firearm before or anything along those lines" (R. Vol. III at 113), and "that [Defendant] never had possession of it, never saw it before, never saw it fired" (R. Vol. III at 118).

identified the gun that had been found in Defendant's pocket as a Micro Desert Eagle .380 ACP pistol. He then testified that, based on his examination of the gun, he concluded it was functional and met the statutory definition of a firearm. Defendant was ultimately convicted and sentenced to the statutory minimum of 180 months' imprisonment. He now appeals his conviction, arguing the district court erred in excluding his father's proposed testimony and, by doing so, the district court deprived him of his Fifth and Sixth Amendment right to present a defense.

## II.

"Generally, we review a district court's decision to exclude evidence for abuse of discretion." *United States v. Markey*, 393 F.3d 1132, 1135 (10th Cir. 2004). However, because Defendant asserts that the exclusion of evidence violated his constitutional rights, we review the district court's decision de novo. *Id.* "If the District Court erred, we then determine whether the error was harmless beyond a reasonable doubt." *Id.*

A defendant's right to present a defense, including the right to present witnesses in his own defense, "is rooted in the Sixth Amendment's confrontation and compulsory process clauses and the Fifth Amendment's guarantee of due process and privilege against self-incrimination." *Id.* (citations omitted). This right, however, is not without limits. Rather, "[t]he defendant's presentation of evidence is constrained by the twin prongs of relevancy and materiality." *United*

-5-

*States v. Solomon*, 399 F.3d 1231, 1239 (10th Cir. 2005). "Simply stated, a criminal defendant does not have a constitutional right to present evidence that is not relevant and not material to his defense." *Id.*

Defendant argues that his father's proposed testimony was relevant to the issue of whether he knowingly possessed a firearm, as required for a conviction under 18 U.S.C. § 922(g)(1) and § 924. Relevant evidence is, of course, evidence having "any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401(a). As we have previously explained, "[t]he knowledge element of § 922(g) and § 924 requires proof that a defendant knew the particular characteristics that made his [gun] a statutory firearm." *United States v. Reed*, 114 F.3d 1053, 1056 (10th Cir. 1997) (internal quotation marks omitted) (second alteration in original). This "knowledge can be inferred from circumstantial evidence, including any external indications signaling the nature of the weapon." *Staples v. United States*, 511 U.S. 600, 615-16 n.11 (1994) (holding that in order to obtain a conviction under 26 U.S.C. § 5861(d), the government is required to prove the defendant knew of the features of the weapon that brought it within the statutory definition of a firearm). The pertinent statute defines "firearm" to include "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by

the action of an explosive" and "(B) the frame or receiver of any such weapon."[4]

18 U.S.C. § 921(a)(3).

Defendant maintains that his father's proposed testimony was relevant in that it "would have gone directly to [his] knowledge of the particular characteristics of the .380 that made it a statutory fire arm [sic]" and would have provided evidence from which counsel could argue

> (1) that [Defendant] did not have adequate time with the .380 to ascertain that it was loaded and, therefore, was not "knowingly" in possession of ammunition; (2) that because he possessed the .380 for a short period of time and had never seen it fired, he could not have knowledge that it was a firearm as defined by statute as opposed to a replica or a gun or frame incapable of either expelling a projectile or of being readily converted to expel a projectile.

(Appellant's Opening Br. at 15.) According to Defendant's proffer, his father's testimony would have contained three statements pertaining to Defendant's knowledge or lack thereof: (1) Defendant "never saw [the gun] fired"; (2) Defendant "never possessed it prior to that day"; and (3) Defendant "only possessed it—certainly decided[ly] not momentarily but not much longer than that anyway, a matter of an hour or something like that." (R. Vol. III at 118.)

Where, as here, "[t]he indictment charged defendant with violating § 922(g)—the felon in possession statute—and the jury instructions included [the]

---

[4] Also included in the definition, but not relevant to this appeal, are "(C) any firearm muffler or firearm silencer" and "(D) any destructive device." 18 U.S.C. § 921(a)(3).

alternative definitions of 'firearm' in § 921(a)(3)[(A) and (B)] . . . , the government needed to prove only that defendant knew the []gun he . . . possessed met at least one of these definitions." *Reed*, 114 F.3d at 1057. The government could, therefore, have proved its case by establishing beyond a reasonable doubt that Defendant knew the gun was one that "will . . . expel a projectile by the action of an explosive," 18 U.S.C. § 921(a)(3)(A).[5] While Defendant's father's proposed testimony was not relevant to whether Defendant knew the gun met the other statutory definitions of a firearm, it had some tendency to make it less probable, even if only ever so slightly so, that Defendant knew the gun "w[ould] . . . expel a projectile by the action of an explosive." 18 U.S.C. § 921(a)(3)(A). A jury could infer from the fact Defendant had never seen the gun fired before and possessed it only for "a matter of an hour or something like that" (R. Vol. III at 18) that Defendant had insufficient familiarity with the weapon to determine whether it was, in fact, functional. Accordingly, we cannot say that Defendant's father's proposed testimony failed to meet the minimal relevancy requirements of Rule 401.

The district court's opinion can fairly be understood as suggesting an alternative ground for excluding Defendant's father's proposed testimony: the

---

[5] At the time of the district court's evidentiary ruling, the government had not narrowed the statutory definitions it would pursue to prove the knowledge element. Indeed, the complete definitions contained in 18 U.S.C. § 921(a)(3)(A) and (B) were given to the jury.

testimony's "probative value [wa]s substantially outweighed by the danger of . . . confusing the issues [and] misleading the jury." Fed. R. Evid. 403. Balancing the probative value of Defendant's father's proposed testimony against the danger of confusing the issues and misleading the jury, we conclude the testimony was properly excluded on this ground. First, the proposed testimony had limited probative value. While it was minimally relevant to whether Defendant knew the gun was currently functional and therefore met the "will expel a projectile" portion of 18 U.S.C. § 921(a)(3)(A), it had no relevance to the other means by which the government could prove that Defendant knew the gun met the statutory definition of a firearm. Specifically, Defendant's father's proposed testimony made it no less probable that Defendant knew the gun was "designed to or may readily be converted to expel a projectile by the action of an explosive" or was "the frame or receiver of any such weapon." 18 U.S.C. § 921(a)(3).

Second, the proposed testimony had the potential to confuse the issues and mislead the jury in several respects. As the government suggested, Defendant's knowledge argument appeared to be "a back-door approach to again suggest to the jury that the defendant's possession was fleeting" (R. Vol. III at 121)—a defense the district court concluded was not warranted by the evidence. We agree that Defendant's father's proposed testimony, which focused on the relatively short period of time during which Defendant possessed the gun, was likely to confuse the issues and mislead the jury by causing the jury to consider a fleeting

possession defense, even if not termed as such or instructed by the court. Furthermore, Defendant's father's testimony that Defendant had not previously possessed the gun prior to the day he was arrested had the potential of inappropriately interjecting the issue of ownership into the jury's consideration of the case. Given that Defendant physically possessed the gun, his ownership of it, or lack thereof, was irrelevant. *See United States v. McCane*, 573 F.3d 1037, 1046 (10th Cir. 2009) ("Possession of a firearm for purposes of 18 U.S.C. § 922(g)(1) can be either actual or constructive. Actual possession exists when a person has direct physical control over a firearm at a given time." (internal quotation marks and citation omitted)). Finally, the proposed testimony had the potential to unduly focus the jury's attention on a single portion of one the statutory definitions of a firearm—whether the gun was currently capable of expelling a projectile by the action of an explosive. As we have previously explained, a conviction under 18 U.S.C. § 922(g) and § 924 does not require that the gun be functional. Rather, it is sufficient that "the gun was 'designed to' expel a projectile, or that it was the 'frame' of such a weapon." *Reed*, 114 F.3d at 1057. Accordingly, the focus Defendant's father's proposed testimony would have placed on whether Defendant knew the gun was functional would have been unwarranted.

Given the limited probative value of Defendant's father's proposed testimony and the likelihood that testimony would confuse the issues and mislead

the jury, we conclude the district court properly exercised its discretion in excluding the testimony under Rule 403. Even if we were to conclude otherwise, we are convinced that any error in the district court's exclusion of the testimony was harmless beyond a reasonable doubt.[6] When viewed in light of the other evidence presented at trial, any inference from Defendant's father's testimony that could be drawn in Defendant's favor is so vastly outweighed that it is "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *United States v. Holly*, 488 F.3d 1298, 1307 (10th Cir. 2007) (internal quotation marks omitted). Specifically, the jury was presented with the following evidence from which it could have inferred Defendant possessed what

---

[6] The government did not assert harmless error in its briefing on appeal and raised this issue for the first time during oral argument (Oral Argument at 29:53-30:20). "Where the government has failed to assert harmless error, this court may in its discretion initiate harmless error review in an appropriate case." *United States v. Doe*, 572 F.3d 1162, 1187 (10th Cir. 2009) (internal quotation marks and brackets omitted). "In deciding whether to exercise its discretion to address harmlessness, this court considers (1) the length and complexity of the record; (2) whether the harmlessness of the errors is certain or debatable; and (3) whether a reversal would result in protracted, costly, and futile proceedings in the district court," *United States v. Holly*, 488 F.3d 1298, 1308 (10th Cir. 2007) (internal quotation marks omitted), although the third factor receives little, if any, weight, *Mollett v. Mullin*, 348 F.3d 902, 920 (10th Cir. 2003).

Considering harmless error sua sponte is appropriate in this case. As to the first factor, the record in this case is not particularly lengthy—approximately 400 pages of material, consisting primarily of transcripts—and "is relatively straightforward, as is the case against [Defendant]." *United States v. Sanchez-Gallegos*, 412 F. App'x 58, 74 (10th Cir. 2011) (Ebel, J., concurring). As to the second factor, we have little doubt that any error in excluding Defendant's father's proposed testimony was harmless for the reasons discussed below.

he knew to be "at the very least, a [pistol] frame, which is a statutory firearm," *Reed*, 114 F.3d at 1057:  (1) the actual gun that had been recovered from Defendant and a photograph of that gun, *see United States v. Jones*, 222 F.3d 349, 352-53 (7th Cir. 2000) (noting "the rifle alone provided the jury with a sufficient basis to reasonably conclude that [the defendant] knew that he possessed a 'firearm' and not a BB gun"); (2) testimony from the ATF agent identifying the gun as a Micro Desert Eagle .380 ACP pistol; (3) testimony from the ATF agent establishing the gun was functional and met the definition of a firearm; (4) testimony from the arresting officer Defendant had been carrying the gun in his right front pocket; and (5) evidence that after the officers discovered the gun in Defendant's pocket, Defendant stated "that the firearm belonged to his deceased father" (R. Vol. III at 67).  In light of all of this evidence, any contrary inference that could be drawn from Defendant's relatively short period of possession is so outweighed that any error in excluding the proposed testimony must be considered harmless.  Accordingly, Defendant cannot prevail on his Fifth and Sixth Amendment challenge.

## III.

For the foregoing reasons, Defendant's conviction is **AFFIRMED**.