# United States Court of Appeals

## For the Eighth Circuit

_____

No. 15-2027

_____

United States of America

*Plaintiff - Appellee*

v.

Ronald F. White, Jr.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: November 17, 2015
Filed: June 2, 2016

_____

Before COLLOTON, GRUENDER, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

A jury convicted Ronald F. White of one count of possession of an unregistered firearm in violation of 26 U.S.C. §§ 5841, 5861(d), 5871, and one count of possession of a stolen firearm in violation of 18 U.S.C. §§ 922(j), 924(a)(2). White argues that: (1) the government did not present sufficient evidence that White knew the firearm in his possession had been stolen; (2) the court improperly instructed the jury on

possession of an unregistered firearm by not requiring the jury to find that White knew of the characteristics of the firearm or had observed the firearm; and (3) the court abused its discretion when it admitted evidence that White was under investigation for a series of violent criminal offenses. Finding that the government did not provide sufficient evidence of possession of a stolen firearm, we reverse this conviction. We affirm the conviction for possession of an unregistered firearm.[1]

I.

In October of 2013, White was a person of interest in Kansas City law enforcement's investigation of a series of felonies. As a part of the investigation, law enforcement conducted surveillance of White's parents' house in Lee's Summit, Missouri, where White sometimes stayed when visiting. The police searched trash left outside of the residence and found marijuana and rolling papers. Based on this contraband, law enforcement obtained a search warrant for the residence and conducted a search. In searching the top shelf of a closet in a guest bedroom, law enforcement found a black duffel bag containing five guns, magazines for the firearms, an Amtrak ticket in White's name dated January or February of 2013, and a credit card receipt. One gun was a Romarm Draco, a 7.62x39 handgun, and another was a Street Sweeper, a 12 gauge shotgun. In other rooms, law enforcement found mail bearing the names "Ronald F. White" and "Ronald F. White, Jr.," and lyrics with "Ron Ron" written at the top.

A Bureau of Alcohol, Tobacco, and Firearms ("ATF") agent examined the guns and determined that because each gun had been manufactured outside of the state of Missouri, all had traveled in interstate commerce. No latent fingerprints were found

_____

[1]Generally, this court refuses to consider pro se briefs when the party is represented by counsel. United States v. Hunter, 770 F.3d 740, 746 (8th Cir. 2014). Thus, we deny White's outstanding pro se motions.

-2-

on the guns. White's DNA was discovered on the trigger of one of the five guns, but not on the Romarm Draco or Street Sweeper. The Romarm Draco had been legally owned by Richard Cushingberry and reported stolen in Kansas City, Missouri, on July 3, 2011. At trial, Cushingberry testified that he fell asleep in his bedroom while holding the gun, woke up to find the gun missing, looked out the window, and saw a man called Rashaad walking away from him. Cushingberry further testified that Rashaad had a friend named "Ron Ron."

White was charged by indictment with one count of possession of an unregistered firearm under 26 U.S.C. §§ 5841, 5861(d), 5871, for the Street Sweeper, and one count of possession of a stolen firearm in violation of 18 U.S.C. §§ 922(j), 924(a)(2), for the Romarm Draco. The case proceeded to jury trial on July 21 and 22, 2014. White submitted a motion in limine seeking to prohibit evidence that White was a person of interest in a series of homicides and a home invasion in the Kansas City area, asserting that such evidence was irrelevant, unduly prejudicial, and constituted improper evidence of other bad acts under Federal Rules of Evidence 401, 402, 403, and 404(b). The government argued that the evidence was admissible to explain the context of the police investigation of White. The district court denied the motion, determining that such evidence was "admissible to show context and the circumstances of the crimes charged in this case." White renewed the motion at trial and the district court instructed the government that it should limit any reference to the fact that White was under investigation for other felonies or other criminal activity.

At trial, Loran Freeman, a Kansas City Police Department Detective who secured the search warrant and conducted the search, testified. He explained that he was assigned to the career criminal unit which investigated "violent crimes, whether it be weapons-related offenses, violent assaults, serious crime in the way of robbery, whether it be armed or not, and other violent offenses." Freeman further testified that he was told by an officer investigating "a series of violent criminal offenses" to start

surveillance of White. The court admitted the signed application for the search warrant, which referred to homicides, but prohibited the government from displaying it to the jury. A second detective testified that he investigated those offenders who "are [of] career criminal status[,] repeat offenders, [or the] more violent type of offenders." (sic).

The court instructed the jury as to possession of an unregistered firearm as follows:

INSTRUCTION NO. 16

The crime of possession of an unregistered firearm, a Street Sweeper, Model Street Sweeper, 12 gauge shotgun, serial number SH 12277 as charged in Count One of the Superseding Indictment has five elements, which are:

*One*, on or about October 31, 2013, the defendant knowingly possessed a firearm, a Street Sweeper, Model Street Sweeper, 12 gauge shotgun, serial number SH12277;

*Two*, the firearm was a shotgun having a barrel which has a bore of more than one-half inch in diameter;

*Three*, the firearm is not generally recognized as suitable for sporting purposes;

*Four*, the firearm was capable of operating as designed; and

*Five*, the firearm was not registered to the defendant in the National Firearms Registration and Transfer Record.

For you to find the defendant guilty of possession of an unregistered firearm, the Government must prove all of these elements beyond a reasonable doubt; otherwise, you must find the defendant not guilty.

-4-

White objected to Instruction No. 16, stating that it failed to require that the jury find that White "knew of the characteristics of the firearm, that the defendant knew the barrel had a bore of more than one-half inch, and the defendant knew that the firearm was not generally recognized for sporting purposes," which brought it under the coverage of the National Firearms Act. Registration would be required if the Street Sweeper was a weapon "which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, the barrel . . . of which ha[s] a bore of more than one-half inch in diameter, except a shotgun or shotgun shell which the Secretary finds is generally recognized as particularly suitable for sporting purposes." 26 U.S.C. § 5845(f)(2). White offered an alternate instruction, Instruction C, which modified the third element to state, "*Three*, the defendant knew of the characteristics of the firearm, that is it had a barrel which has a bore of more than one-half inch in diameter," which the district court refused. White asserted that the court erred when it overruled the objection and failed to give his proposed instruction. White moved for a judgment of acquittal at the close of all evidence, and the motion was denied. The jury convicted White of both counts in the indictment, and the district court sentenced White to concurrent 57-month terms of imprisonment. The district court denied White's post-trial motion for a new trial.

## II.

First, White contends that there was insufficient evidence for the jury to convict him of being in possession of a stolen firearm in violation of 18 U.S.C. § 922(j). The elements of this crime are "(1) the defendant knowingly possessed the firearm, (2) the firearm was stolen, (3) the defendant knew or had reasonable cause to believe the firearm was stolen, and (4) the firearm was shipped or transported in interstate commerce either before or after it was stolen." United States v. Provost, 237 F.3d 934, 938 (8th Cir. 2001) (citing 18 U.S.C. § 922(j)).

Specifically, White asserts that there was insufficient evidence to support element three, "the defendant knew or had reasonable cause to believe the firearm was stolen."

This court reviews the sufficiency of evidence de novo. United States v. Johnson, 745 F.3d 866, 868-869 (8th Cir. 2014). We view the evidence in the light most favorable to the verdict and give the government the benefit of all reasonable inferences which could be drawn from the evidence. Provost, 237 F.3d at 937. This means that if there is any construction of the evidence that could have permitted the jury to find beyond a reasonable doubt that White knew or had reason to believe the firearm was stolen, we must affirm. See id.; United States v. Beltz, 385 F.3d 1158, 1163 (8th Cir. 2004). "We do not weigh the evidence or assess the credibility of witnesses;" all credibility issues are resolved in favor of the verdict. United States v. Johnson, 688 F.3d 494, 502 (8th Cir. 2012).

At trial, no direct evidence was presented that White knew that the Romarm Draco had been stolen. But circumstantial evidence alone can constitute sufficient evidence. See United States v. Arteaga, 436 F.App'x. 343, 349 (5th Cir. 2011) (unpublished per curiam) (finding sufficient evidence that the defendant knew the firearm was stolen where he purchased it for 26% of the market price from an unlicensed seller who neither claimed to have lawfully acquired the firearm, nor produced documentation indicating he had lawfully acquired the firearm). The government points to Cushingberry's testimony and the hidden location of the Romarm Draco as evidence that it was stolen. Indeed, this is the extent of the evidence presented regarding White's knowledge that the Romarm Draco had been stolen.

White points to United States v. Howard and United States v. Ayala-Garcia to show the limits of what inferences jurors can reasonably make to reach certainty beyond a reasonable doubt. 214 F.3d 361 (2d. Cir. 2000); 574 F.3d 5 (1st Cir. 2009). In Howard, the defendant was convicted for possession of a stolen firearm based on

evidence that the defendant, a convicted felon, could not have obtained the weapon legally, and that the gun in question was found alongside another gun with an obliterated serial number. 214 F.3d at 363. The jury convicted the defendant of being in possession of a stolen firearm based on this evidence. Id. On appeal, the government argued that when the defendant obtained the gun through the black market, he shared in the knowledge that the gun was likely stolen. Id. at 364. The Second Circuit rejected this contention, finding that neither the proximity to the gun with the obliterated serial number nor Howard's status as a convicted felon was sufficient to allow a reasonable jury to conclude beyond a reasonable doubt that Howard knew or had reason to know that the firearm was stolen. Id. In Ayala-Garcia, the defendant was convicted of aiding and abetting possession of a stolen firearm based on evidence that the defendant paid cash for a gun and bought it in a public housing parking lot from a man who had an AK-47 and drugs within his car. 574 F.3d at 9. The First Circuit reversed, finding that this constituted insufficient evidence to support the conviction. Id. at 15. It reasoned that the suspicious circumstances would apply equally if the seller was unlawfully reselling a firearm that an associate had legitimately acquired. Id.

The evidence presented in this case does not rise to the level of the evidence in Ayala-Garcia or Howard. No evidence was presented regarding how or under what circumstances White obtained the gun. The evidence does not indicate whether the circumstances were suspicious, nor does the proof indicate that White had reasonable cause to believe the firearm was stolen. Even if the jury could infer from White's placement of the gun that he did not believe it was legally obtained, as explained in Ayala-Garcia, no reasonable jury could find beyond a reasonable doubt that the reason that White believed he needed to hide the gun was because it had been stolen. Indeed, the government presented no evidence that three other firearms "hidden" with the Romarm Draco were unlawful to possess. Adequate proof of scienter is simply not here. We therefore find there was insufficient evidence to support White's conviction for possession of a stolen firearm.

-7-

III.

Next, White argues that the district court abused its discretion when it rejected White's proposed jury instruction,[2] which required the jury to find that White "knew of the characteristics of the firearm, that is it had a barrel which has a bore of more than one-half inch in diameter." Alternatively, if the Street Sweeper is quasi-suspect, White argues that the court erred in failing to provide a jury instruction that required the jury to find that White had observed the Street Sweeper, although White proposed

---

[2]         INSTRUCTION NO. C

The crime of possession of an unregistered firearm as charged in Count One of the Indictment has five elements, which are:

*One*, on or about October 31, 2013, the defendant knowingly possessed a firearm, a Street Sweeper, Model Street Sweeper, 12 gauge shotgun, serial number SH12277;

*Two*, the firearm was a shotgun having a barrel which has a bore of more than one-half inch in diameter;

*Three*, the defendant knew of the characteristics of the firearm, that is it had a barrel which has a bore of more than one-half inch in diameter;

*Four*, the firearm was in operating condition; and

*Five*, the firearm was not registered to the defendant in the National Firearms Registration and Transfer Record.

For you to find the defendant guilty of possession of an unregistered firearm, the Government must prove all of these elements beyond a reasonable doubt; otherwise, you must find the defendant not guilty.

no such instruction. The government argues that: (1) the Street Sweeper is quasi-suspect, so knowledge of the characteristics bringing it under the National Firearm Act is not required; (2) White did not object to the instructions on the basis that they failed to require a finding that White observed the characteristics of the gun; and (3) the absence of an instruction containing such an element does not constitute error.

The court reviews jury instructions for abuse of discretion and reverses where errors "misled the jury or had a probable effect on the jury's verdict." United States v. Thompson, 686 F.3d 575, 579 (8th Cir. 2012). Instructions are adequate if, taken as a whole, they inform the jury of the essential elements of the offense charged and of the government's burden of proof. United States v. Fast Horse, 747 F.3d 1040, 1042 (8th Cir. 2014). Error may be disregarded if it appears "beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." United States v. Fiorito, 640 F.3d 338, 349 (8th Cir. 2011). But where the party fails to object to jury instructions, the court will review only for plain error. Fast Horse, 747 F.3d at 1041; United States v. Poitra, 648 F.3d 884, 887 (8th Cir. 2011).

White argues that Staples v. United States requires the court to instruct the jury that knowledge of the characteristics bringing a weapon under the coverage of the National Firearms Act is a necessary element of the offense of possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d). 511 U.S. 600 (1994). However, Staples also instructs that "certain categories of guns—no doubt including the machineguns, sawed-off shotguns, and artillery pieces that Congress has subjected to regulation—as items the ownership of which would have . . . quasi-suspect character." Id. at 611-12 (citing United States v. Freed, 401 U.S. 601, 609 (1971) (recognizing regulations may be premised on the theory that "one would hardly be surprised to learn that possession of hand grenades is not an innocent act," in part because hand grenades "are highly dangerous offensive weapons")). The court's reasoning "depend[ed] upon a commonsense evaluation of the nature of the particular

device or substance Congress has subjected to regulation and the expectations that individuals may legitimately have in dealing with the regulated items." Id. at 620.

In United States v. Barr, this court further explained that where the weapon is "clearly not a traditionally lawful weapon and [the party has] no legitimate expectation that the weapon was not subject to regulation," it is quasi-suspect. 32 F.3d 1320, 1324 (8th Cir. 1994). Where the firearm is quasi-suspect, the "'common-sense' evaluation [required in Staples] indicates that a specific jury finding of knowledge of the weapon's incriminating characteristics is unnecessary." Id. "The Government need only prove that the defendant possessed the 'quasi-suspect' weapon and observed its characteristics." Id. Thus, if the Street Sweeper is clearly not a traditionally lawful weapon such that White could not have legitimately expected it to be free from regulation, the court did not err in overruling White's objection to the jury instructions' failure to require a finding that White knew of the characteristics of the Street Sweeper which bring it under the coverage of the National Firearms Act. Whether the semi-automatic Street Sweeper 12 gauge shotgun qualifies as a quasi-suspect weapon is an issue of first impression.[3]

Other circuits have disagreed with Barr, explaining that even when a weapon is quasi-suspect, the government must prove a defendant's knowledge of the characteristics that bring the weapon within the purview of the statute. United States v. Gergen, 172 F.3d 719, 724 (9th Cir. 1999); United States v. Reyna, 130 F.3d 104, 108 (5th Cir. 1997); United States v. Edwards, 90 F.3d 199, 204 (7th Cir. 1996). See

---

[3]In United States v. Backer, this court found that the jury could reasonably have inferred that the possessor of a Street Sweeper shotgun, which had been modified in obvious internal and external ways which enabled it to act as a fully automatic machine gun, knew of the Street Sweeper's fully automatic characteristics. 362 F.3d 504, 507 (8th Cir. 2004). Unlike the gun in Backer, in this case, the Street Sweeper was unmodified.

-10-

also <u>Rogers v. United States</u>, 522 U.S. 252, 254 (1998) (plurality opinion) ("[T]he <u>mens</u> <u>rea</u> element of a violation of § 5861(d) requires the Government to prove that the defendant knew that the item he possessed had the characteristics that brought it within the statutory definition of a firearm."). The government conceded such a knowledge requirement in <u>United States v. Dewalt</u>, 92 F.3d 1209, 1212 (D.C. Cir. 1996). This panel, too, has reservations about the reasoning of <u>Barr</u>, but of course we must apply it as circuit precedent.

Using the common-sense evaluation required by <u>Barr</u>, we find that the Street Sweeper 12 gauge shotgun is quasi-suspect. "A 'Street Sweeper' is a short-barreled twelve-gauge shotgun with a twelve-round drum feed, which originated in South Africa. In 1994, the weapon was classified as a destructive device because the weapon failed to meet sporting-weapon criteria." <u>Backer</u>, 362 F.3d at 506 n.1. It has been described as a "rapid-fire, high-powered shotgun" and "has the appearance of a large machine gun." <u>United States v. Brown</u>, No. CR-07-111-PCT-DGC, 2008 WL 2225762, at *2 (D. Ariz. May 28, 2008); <u>United States v. Taylor</u>, No. 13-CR-0003-001-CVE, 2013 WL 2149644, at *4 (N.D. Okla. May 16, 2013) (describing the Street Sweeper as a "12-gauge shotgun with a folding stock, double hand grips, and a 12-shell drum magazine that rotates rapidly enough for 12 shots to be fired in less than 3 seconds").[4] At trial, Ronald Davis, an expert for the government explained that the Street Sweeper was developed in South Africa for the purpose of "crowd control." The Street Sweeper is capable of firing a large number of rounds in rapid succession

---

[4]The record shows that when the ATF discovered in 1984 that the Street Sweeper was being imported, the weapon was banned from importation for lack of a generally recognized sporting purpose. R. Doc. 89, at 101. When several years later the weapon was manufactured domestically, <u>id.</u>, the ATF issued a ruling that the Street Sweeper did not qualify for the domestic sporting purpose exception. <u>See</u> 1994 WL 575785 (ATF Rul. 94-2). The agency concluded that the weight, size, bulk, designed magazine capacity, and configuration of the Street Sweeper showed that the firearm was not particularly suitable for sporting purposes. <u>Id</u>.

and its appearance reveals this capability to any party who possesses and observes it. We conclude that the Street Sweeper does not have the appearance of a traditionally lawful weapon, and White had no legitimate expectation that it was not subject to regulation. Thus, the Street Sweeper is quasi-suspect, so, according to Barr, the jury need not have found that White knew of the characteristics that bring it under the registration requirements of the National Firearms Act. The court did not abuse its discretion in refusing Instruction C as proposed by White.

However, when the characteristics of a weapon render it quasi-suspect, the government still must prove that defendant possessed the weapon and observed its characteristics. Barr, 32 F.3d at 1324. After the district court rejected White's proposed Instruction C, counsel neither objected to the jury instruction given on the basis that it did not require a finding that White observed the Street Sweeper nor proposed alternative instructions requiring a finding of observation. Thus, the court will only reverse for plain error. Fed. R. Crim. Pro. 30(d), 52(b); Fast Horse, 747 F.3d at 1042. This means that unless White shows that there was "(1) an error, (2) that was plain, (3) affects substantial rights, and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings," the court will not reverse. See United States v. Rush-Richardson, 574 F.3d 906, 910 (citing United States v. Olano, 507 U.S. 725, 735-36 (1993)) (internal quotations omitted). "The district court has wide discretion in formulating appropriate jury instructions[,] . . . [a]ccordingly, we will affirm the use of particular jury instructions if they fairly and adequately submitted the issues to the jury." Poitra, 648 F.3d at 887 (internal quotations omitted). "A jury instruction is plainly erroneous if it misstates the law." Fast Horse, 747 F.3d at 1042.

Instruction No. 16—which required a finding that White "knowingly possessed a firearm, a Street Sweeper, Model Street Sweeper, 12 gauge shotgun"—was ambiguous about the knowledge required for a conviction. A plurality of the

Supreme Court in Rogers v. United States, 522 U.S. at 258 & n.7, and at least one other circuit, United States v. Thompson, 82 F.3d 849, 854 (9th Cir. 1996), have concluded that comparable instructions are sufficient to require a finding that the defendant knew the characteristics of the weapon that brought it within the statutory definition of "firearm." On that view, Instruction No. 16 by itself satisfied the knowledge requirement of Staples, and there was no need for an additional instruction about whether White observed the characteristics of the firearm. Because the adequacy of Instruction No. 16 was at least "subject to reasonable dispute," Puckett v. United States, 556 U.S. 129, 135 (2009), there was no obvious error in the instruction.

IV.

Finally, White argues that the district court erred in permitting the government to present evidence that law enforcement officers were investigating White with respect to a series of violent criminal offenses. White submitted a motion in limine seeking exclusion of evidence that White was a person of interest in a series of homicides and a home invasion. The court denied the motion, subject to reconsideration at trial, at which time White renewed the motion. Because White did not object to the submission of the evidence in question at trial during the witnesses' testimony, we review for plain error. See Poitra, 648 F.3d at 887.

We find that error did not occur. Evidence of a defendant's other criminal activity may be permitted for the purpose of providing context. United States v. Moore, 735 F.2d 289, 292 (8th Cir. 1984). "A jury is entitled to know the circumstances and background of a criminal charge." Id. The jury cannot be expected to make its decision without information regarding the time, place, and circumstances of the acts forming the basis of the charge. Id. At trial, the investigating detectives testified that they were members of the "career criminal" unit

-13-

and that they investigated "violent" and "repeat offenders."  One testified that an officer who had been investigating "a series of violent crimes" had instructed him to surveil White.  This evidence provided the context for the investigators' "trash pull," which permitted law enforcement to obtain the search warrant for the Kansas City home.  Although some of the evidence in question is arguably prejudicial, even if the court had erred in admitting the evidence in question, such error would not rise to the level of being "clear or obvious."  See Poitra, 648 F.3d at 887.

## V.

For the foregoing reasons, we affirm White's conviction for possession of an unregistered firearm, but reverse White's conviction and sentence for possession of a stolen firearm, based on insufficiency of the evidence.   We remand to the district court for further proceedings consistent with this opinion.

_____