# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2027
_____

United States of America

*Plaintiff - Appellee*

v.

Ronald F. White, Jr.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: October 18, 2016
Filed: July 11, 2017

_____

Before RILEY, Chief Judge,[1] WOLLMAN, LOKEN, MURPHY, SMITH, COLLOTON, GRUENDER, BENTON, SHEPHERD, and KELLY, Circuit Judges, En Banc.

_____

SHEPHERD, Circuit Judge.

---

[1]The Honorable William J. Riley stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 10, 2017. He has been succeeded by the Honorable Lavenski R. Smith.

Ronald White appeals his conviction of possession of an unregistered firearm, 26 U.S.C. §§ 5841, 5861(d), 5871, and possession of a stolen firearm, 18 U.S.C. §§ 922(j), 924(a)(2). A panel of this court unanimously affirmed the unregistered firearm conviction but reversed the stolen firearm conviction due to insufficient evidence regarding White's knowledge that the firearm had been stolen. United States v. White, 824 F.3d 783, 792 (8th Cir. 2016). Additionally, the panel rejected White's challenge to an evidentiary ruling by the district court which allowed the jury to hear evidence that White was under investigation for a series of violent crimes. Id.

We granted rehearing en banc and vacated the panel opinion. With jurisdiction under 28 U.S.C. § 1291, we now reverse the unregistered firearm conviction and remand for further proceedings.[2] Part II of the panel opinion reversing the stolen firearm conviction is reinstated.

## I. Background

Ronald White was a person of interest in Kansas City law enforcement's investigation of a series of violent crimes. While executing a valid search warrant in the home of White's parents, officers recovered a black duffel bag from the top shelf of a closet in the bedroom that White occupied during his occasional visits. Inside the bag were five guns, several gun magazines, and an Amtrak ticket and credit card receipt in White's name. Among the guns were an unregistered "Street Sweeper" shotgun and a stolen 7.62 x 39 Romarm Draco handgun.

White was charged with possession of a stolen firearm for the Romarm Draco. 18 U.S.C. §§ 922(j), 924(a)(2). Possession of a stolen firearm requires the

---

[2]We decline to consider White's pro se arguments filed February 23, 2017. See United States v. Hunter, 770 F.3d 740, 746 (8th Cir. 2014) ("It has long been Eighth Circuit policy that when a party is represented by counsel, we will not accept pro se briefs for filing.") (internal quotation marks omitted).

government to establish the defendant's knowledge or "reasonable cause to believe the firearm was stolen." United States v. Provost, 237 F.3d 934, 938 (8th Cir. 2001) (citing 18 U.S.C. § 922(j)). At trial, no direct evidence was presented that White knew that the Romarm Draco had been stolen. The circumstantial evidence, which can be enough to prove the required mens rea, amounted to the fact that the Romarm Draco was hidden inside a duffel bag and stowed in White's closet, as well as testimony from the gunowner, Richard Cushingberry. See United States v. Arteaga, 436 Fed. App'x 343, 349 (5th Cir. 2011) (per curiam) (finding circumstantial evidence sufficient to prove that defendant knew the firearm was stolen). Cushingberry testified that on the evening of July 3, 2011, he fell asleep in his bedroom with the Romarm Draco lying next to him, woke up to find the gun missing, looked out the window, and saw a man named Rashaad walking away from the house. Rashaad lived in the neighborhood and, according to Cushingberry, was a friend of White's.

Additionally, because White's Street Sweeper was unregistered, White was charged with possession of an unregistered firearm under § 5861(d) of the National Firearms Act. 26 U.S.C. § 5861(d). Section 5861(d) criminalizes possession of an unregistered "firearm," a term the Act defines to include a "destructive device," the barrel of which has a bore of more than one-half inch in diameter. 26 U.S.C. § 5845(a), (f). The Street Sweeper, a 12-gauge shotgun, is subject to the Act's registration mandate because it has a bore diameter of .729 inches.

The district court gave the jury the following instruction on the elements of possession of an unregistered firearm:

**INSTRUCTION NO. 16**
The crime of possession of an unregistered firearm, a Street Sweeper, Model Street Sweeper, 12 gauge shotgun, serial number SH12277 as charged in Count One of the Superseding Indictment[,] has five elements, which are:

-3-

> *One*, on or about October 31, 2013, the defendant knowingly possessed a firearm, a Street Sweeper, Model Street Sweeper, 12 gauge shotgun, serial number SH12277;
> *Two*, the firearm was a shotgun having a barrel which has a bore of more than one-half inch in diameter;
> *Three*, the firearm is not generally recognized as suitable for sporting purposes;
> *Four*, the firearm was capable of operating as designed; and
> *Five*, the firearm was not registered to the defendant in the National Firearms Registration and Transfer Record.
> For you to find the defendant guilty of possession of an unregistered firearm, the Government must prove all of these elements beyond a reasonable doubt; otherwise, you must find the defendant not guilty.

White objected to Instruction No. 16 on the ground that the second element—the firearm's bore diameter—had no mens rea requirement. Citing Staples v. United States, 511 U.S. 600 (1994), White argued that the government must prove that he knew the Street Sweeper had a bore diameter of more than a half-inch because that diameter is what makes the Street Sweeper subject to the National Firearms Act. White offered an alternative instruction which modified the third element to state, "*Three*, the defendant knew of the characteristics of the firearm, that is it had a barrel which has a bore of more than one-half inch in diameter." The district court rejected White's alternative instruction.

The jury convicted White of both counts in the indictment, and the district court sentenced him to concurrent 57-month terms of imprisonment.

## II. Discussion

In Staples, the Supreme Court held that a district court must instruct the jury that knowledge of the characteristics bringing a firearm under the coverage of the

National Firearms Act is a necessary element of the offense of possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d). 511 U.S. at 619. A panel of this court created a caveat to Staples in United States v. Barr, 32 F.3d 1320 (8th Cir. 1994). Under Barr, where "the characteristics of the weapon itself render it 'quasi-suspect,' Staples does not require proof that the defendant knew of the specific characteristics which make the weapon subject to the Act." 32 F.3d at 1324. In such cases, "[t]he government need only prove that the defendant possessed the 'quasi-suspect' weapon and observed its characteristics." Id.

We granted rehearing en banc in order to determine whether Barr, an outlier among federal courts, should remain good law. The parties submitted supplemental briefing on this issue[3] as well as the issue of whether, if Barr is overruled, the jury instructions adequately addressed the knowledge element as set forth in Staples. For the reasons discussed below, we hold that Barr is inconsistent with the Supreme Court's mens rea requirement in Staples and, accordingly, Barr is overruled.[4] We further hold that, under Staples, the jury was not properly instructed on the mens rea required to secure a conviction for possession of an unregistered firearm. We reverse that conviction and remand for a new trial.

## A. Barr is Overruled

"The existence of a mens rea is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence." Dennis v. United States, 341 U.S. 494, 500 (1951) (emphasis omitted). Congress need not expressly announce a

---

[3]In its supplemental briefing, the government concedes that Barr should be overruled and that the mens rea set forth in Staples applies in all cases brought under § 5861(d).

[4]"The Court en banc is not, of course, bound by prior opinions of panels. We have both the power and the right, in appropriate cases, to overrule panel opinions." Fast v. Sch. Dist. of City of Ladue, 728 F.2d 1030, 1034 (8th Cir. 1984) (en banc).

mens rea in a criminal statute in order for the Supreme Court to predicate conviction under that statute on proof of knowledge or intent. This dynamic is evident in Staples, where the Court held that a conviction for possession of an unregistered firearm under the National Firearms Act, a law that is silent as to mens rea, nonetheless requires the defendant's knowledge of the characteristics of the firearm bringing it under the Act's registration mandate. 511 U.S. at 619.

In reaching its holding, Staples acknowledged the competing interests—both proclaimed in the name of "public welfare"—of federal regulators and private individuals who own guns. On one hand, Congress seeks to protect the public from certain dangerous items through strict criminal liability for their possession. Id. at 606-07. On the other, "despite their potential for harm, guns generally can be owned in perfect innocence," and gun laws must co-exist with the firmly embedded custom of lawful gun ownership in this nation. Id. at 610-11.

Though Staples rejected imposing strict liability on owners of unregistered firearms, Barr disposed of the Staples mens rea requirement in cases where a defendant is charged with unlawful possession of a "quasi-suspect" firearm. 32 F.3d at 1324. Barr relied in part on a reference in Staples to earlier Supreme Court precedent, United States v. Freed, 401 U.S. 601 (1971). The defendants in Freed were charged under the National Firearms Act with possession of unregistered hand grenades. Id. at 603. The Court determined that the government need not prove the defendants' knowledge that the grenades were unregistered, because "one would hardly be surprised to learn that possession of hand grenades is not an innocent act." Id. at 609. Recounting Freed's description of hand grenades, the Staples Court remarked:

> Of course, we might surely classify certain categories of guns—no doubt including the machineguns, sawed-off shotguns, and artillery pieces that Congress has subjected to regulation—as items the ownership of which

-6-

would have the same quasi-suspect character we attributed to owning hand grenades in Freed.

511 U.S. at 611-12.

Barr concluded from this passage that Staples did not intend its holding to apply to quasi-suspect weapons because, under Freed, there is no legitimate expectation that quasi-suspect weapons are unregulated. 32 F.3d at 1324. But Freed did not concern the issue of mens rea as to the physical characteristics of a firearm that require its registration. Rather, Freed held only that the government need not prove knowledge that a firearm is unregistered. 401 U.S. at 607. Staples itself acknowledged the distinction. 511 U.S. at 609 ("In Freed, we decided only that [the National Firearms Act] does not require proof of knowledge that a firearm is *unregistered*. . . . [That] determination . . . suggests no conclusion concerning whether [the Act] requires the defendant to know of the features that make his weapon a statutory 'firearm' . . . ."). Thus, to the extent Freed applies in this case, it means only that the government does not have to show that White knew his Street Sweeper was unregistered. See United States v. Reyna, 130 F.3d 104, 108 (5th Cir. 1997) ("[I]f sawed-off shotguns are 'quasi-suspect' weapons under Freed, it simply means that a defendant does not have to have knowledge that the shotgun is unregistered; it says nothing about whether a defendant has to know that his shotgun has the characteristics that bring it within the statute.").[5]

_____

[5]There is at least one additional reason why Staples's reference to Freed does not support Barr's reasoning. Staples identifies machineguns as one type of gun that "might surely" be categorized as quasi-suspect under Freed. Staples, 511 U.S. at 611-12. If the Court intended to exclude machineguns from its mens rea requirement on account of them being quasi-suspect, then defendant Staples—who was charged with possessing an unregistered machinegun—would have lost. But Staples prevailed, precisely because the government did not fulfill its obligation to prove that he knew of the machinegun's incriminating characteristics. Id. at 619-20; see also United States v. Edwards, 90 F.3d 199, 204 (7th Cir. 1996) ("[T]he fact that Staples itself involved a machinegun belies any attempt to read into the passage a general

-7-

When Freed is properly understood, it becomes clear that Staples did not endorse an exception to its mens rea requirement. By holding to the contrary, Barr placed gunowners in the precarious position of facing strict criminal liability for possessing a firearm merely because a panel of judges may later classify that firearm as part of an arbitrary subcategory of weapons. In White's case, for instance, Barr led the panel to classify the Street Sweeper as "quasi-suspect" for reasons completely unrelated to the reason Congress chose to regulate the gun—*i.e.*, the gun has a bore of more than one-half inch in diameter and is not "generally recognized [by the Secretary of the Treasury][6] as particularly suitable for sporting purposes." 26 U.S.C. § 5845(a), (f).[7] Bound under Barr's appearance-driven evaluation of firearms, the panel did not once discuss the Street Sweeper's bore diameter but instead concluded that a Street Sweeper is quasi-suspect because of its threatening physical attributes. White, 824 F.3d at 791 (stating that the Street Sweeper "is a short-barreled twelve-gauge shotgun with a twelve-round drum feed . . . [with] the appearance of a large machine gun"; "The Street Sweeper is capable of firing a large number of rounds in rapid succession and its appearance reveals this capability . . . ."; and, "[T]he Street Sweeper does not have the appearance of a traditionally lawful weapon") (citations omitted) (internal quotation marks omitted).

exemption to the mens rea requirement for such 'quasi-suspect' guns . . . .") (emphasis omitted).

[6]When the Bureau of Alcohol, Tobacco, and Firearms was transferred from the Department of the Treasury to the Department of Justice under the Homeland Security Act of 2002, see 5 U.S.C. § 531, the authority to administer and enforce the National Firearms Act was transferred to the Attorney General.

[7]We emphasize that this case involves the issue of mens rea regarding the firearm's incriminating physical characteristics under 26 U.S.C. § 5845(f)(2). We offer no opinion or analysis as to the government's burden (or lack thereof) with respect to a defendant's (1) knowledge that his or her firearm has not been recognized as suitable for sporting purposes, or (2) knowledge that the firearm has characteristics that make it not particularly suitable for sporting purposes.

But it is not unlawful to own a gun, registered or otherwise, solely because of its formidable presence.  See Staples, 511 U.S. at 611 (rejecting the view that "dangerousness alone should alert an individual to probable regulation").  Rather, as Staples clearly articulates, in a § 5861(d) prosecution the only characteristics relevant to a defendant's knowledge are the characteristics subjecting the firearm to federal registration.

In departing from Barr, we note that the decision is an outlier among every other circuit to address the issue.  Those circuits have unequivocally concluded that the Staples mens rea requirement applies irrespective of whether a weapon may be considered "quasi-suspect" for other purposes.  See Greenlee v. United States, 205 F.3d 1340 (6th Cir. 2000) (unpublished table decision) (sawed-off shotgun); United States v. Gergen, 172 F.3d 719, 724 (9th Cir. 1999) (sawed-off shotgun); Reyna, 130 F.3d at 108-09 (sawed-off shotgun); United States v. Owens, 103 F.3d 953, 956 (11th Cir. 1997) (rifle with a seven-inch barrel); Edwards, 90 F.3d at 203-04 (sawed-off shotgun); United States v. Starkes, 32 F.3d 100, 101 (4th Cir. 1994) (sawed-off shotgun); United States v. Mains, 33 F.3d 1222, 1229 (10th Cir. 1994) (sawed-off shotgun); see also United States v. Shaw, 670 F.3d 360, 363 & n.1 (1st Cir. 2012) (assuming Staples applies in a case involving a sawed-off shotgun); United States v. Dewalt, 92 F.3d 1209, 1212 (D.C. Cir. 1996) (government conceded that Staples applies in a case involving a sawed-off shotgun).

In sum, Barr's holding as to the mens rea required for a conviction under the National Firearms Act is wholly inconsistent with Staples and is therefore overruled.  By imposing strict criminal liability on owners of "quasi-suspect" guns—an undefined category that invites arbitrary application—Barr contravenes the Supreme Court's view that Congress did not intend "to make outlaws of gun owners who were wholly ignorant of the offending characteristics of their weapons." Staples, 511 U.S. at 620.  We therefore join our sister circuits in holding that, in all cases in which a defendant is prosecuted under the National Firearms Act for unlawful possession of

an unregistered firearm, the government must prove beyond a reasonable doubt that the defendant knew of the physical characteristics of the weapon bringing the weapon within the ambit of the Act.

## B. The Jury Instructions Were Insufficient

We next consider whether the jury instructions adequately conveyed the government's burden under Staples on the unregistered firearm charge. White timely objected on the basis that Instruction No. 16 did not include the required Staples mens rea as an element of the offense. Accordingly, we review for abuse of discretion. United States v. Poitra, 648 F.3d 884, 887 (8th Cir. 2011). We will reverse if the instructions contained errors that "misled the jury or had a probable effect on the jury's verdict." United States v. Thompson, 686 F.3d 575, 579 (8th Cir. 2012) (internal quotation marks omitted). The verdict will stand, however, if the instructions "taken as a whole adequately advise the jury of the essential elements of the offenses charged and the burden of proof required of the government." United States v. Pereyra-Gabino, 563 F.3d 322, 328 (8th Cir. 2009) (internal quotation marks omitted).

Instruction No. 16 does not expressly recite the Staples mens rea requirement. Whether such an instruction nonetheless complies with Staples is a question that has divided judges. A plurality of the Supreme Court and a unanimous Ninth Circuit panel upheld comparable instructions under Staples, finding the instructions to adequately convey the requirement that the defendant knew the firearm's incriminating characteristics. Rogers v. United States, 522 U.S. 252, 258-59 & 259 n.7 (1998) (plurality opinion); United States v. Thompson, 82 F.3d 849, 854 (9th Cir. 1996). But this view drew a sharp dissent in Rogers, 522 U.S. at 260-61 (Kennedy, J., dissenting), and the plurality itself expressed doubt that the instruction would be sufficient had the case not been submitted to the jury before Staples was decided, id. at 258 (plurality opinion) ("We assume that the trial judge would have been more

explicit in explaining the mens rea element of these offenses if <u>Staples</u> had been decided prior to submitting the case to the jury.") (emphasis omitted). In fact, the plurality warned trial courts not to rely on the instruction, stating, "It would be wise for trial courts to explain the <u>Staples</u> requirement more carefully than the instruction used in this case to foreclose any possibility that jurors might interpret the instruction as Justice Kennedy does in his dissent." <u>Id.</u> at 259 n.7.

Even assuming <u>Rogers</u> and <u>Thompson</u> support the proposition that Instruction No. 16, on its own, satisfies <u>Staples</u>, "a single instruction to a jury may not be judged in artificial isolation." <u>United States v. Park</u>, 421 U.S. 658, 674 (1975) (internal quotation marks omitted). Rather, "jury instructions are considered within the context of the whole trial, and in light of other instructions." <u>United States v. Sutera</u>, 933 F.2d 641, 646 (8th Cir. 1991). Here, the jury received two additional instructions that, when viewed alongside Instruction No. 16, establish that the entire charge to the jury did not adequately convey the essential elements of the unregistered firearm offense.

Before opening arguments, the jury received Instruction No. 1, which introduced the charges against White. With respect to the unregistered firearm charge, the instruction stated that White "is charged with knowingly received [sic] and possessed [sic] a firearm, to wit: a Street Sweeper, Model Street Sweeper, 12 gauge shotgun, not registered to him in the National Firearms Registration and Transfer Record, on or about October 31, 2013." As to the stolen firearm charge, the next paragraph in Instruction No. 1 stated that White "is charged with knowingly possessed [sic], a stolen firearm, to wit: a Romarm/Cugir, Model Draco-C, 7.62x39 caliber semiautomatic handgun, which had been shipped and transported in interstate commerce, *knowing and having reasonable cause to believe the firearm was stolen*." (emphasis added).

The description of the charges in Instruction No. 1 shows that, from the outset, the jury was informed that the government's burden to prove mens rea for an unregistered firearm conviction is less exacting than its burden to prove mens rea for a stolen firearm conviction. Indeed, the knowledge element appeared twice in the paragraph explaining the stolen firearm charge—first to modify "possessed" and next to modify "the firearm was stolen"—but just once in the paragraph explaining the unregistered firearm charge—to modify only "received and possessed." This reasonably suggested to the jury that, while the stolen firearm charge requires that White knew that he possessed a stolen firearm *and* that the firearm was stolen, the mens rea for the unregistered firearm charge is limited to White's knowledge that he possessed a firearm.[8]

At trial, the district court reinforced this implication when it provided Instructions No. 16 and 17, which set forth the specific elements of each offense. As in Instruction No. 1, Instruction No. 16 again identified only a single, narrow mens rea for the unregistered firearm offense: knowing possession. Instruction No. 16 stated:

> *One*, on or about October 31, 2013, the defendant knowingly possessed a firearm, a Street Sweeper, Model Street Sweeper, 12 gauge shotgun, serial number SH12277;

---

[8]The government argues that, because all 12-gauge shotguns have a bore of more than one-half inch in diameter, White's knowledge that he possessed a 12-gauge shotgun necessarily means White knew the size of the bore. While this might be appropriate to argue to the jury, the issue before this court is not what inferences can be drawn from practicalities but whether the jury instructions in this case adequately conveyed the essential elements of the unregistered firearm offense. As discussed below, Instruction No. 16 identifies the Street Sweeper's bore width as an element *separate and distinct* from White's knowledge that he possessed a Street Sweeper, 12-gauge shotgun. Untold inferences should not form the basis of criminal sanctions on gunowners. Thus, we reject the government's argument on this point.

-12-

*Two*, the firearm was a shotgun having a barrel which has a bore of more than one-half inch in diameter[.]

As to the mens rea for the stolen firearm offense, Instruction No. 17 stated:

*One*, on or about October 31, 2013, the defendant knowingly possessed a stolen firearm; . . .
*Three*, the defendant *knew or had reasonable cause to believe that the firearm had been stolen*.

(emphasis added).

Once more, the instructions together inform the jury that, unlike the mens rea for the stolen firearm charge, the mens rea for the unregistered firearm charge is limited to knowledge of possession and does not require knowledge of any specific facts related to the firearm's physical traits. To read the instructions any other way would require the jury to interpret Instruction No. 16 such that the word "knowingly" in element one also applies to element two, which appears in a separate paragraph. We find that no reasonable jury would employ such a strained interpretation, particularly given that it would require the jury to either ignore the obvious difference between the instructions or to attribute no meaning to the repeated mens rea in Instruction No. 17. The more natural reading of Instructions No. 1, 16, and 17, is that White could be convicted of possessing the unregistered Street Sweeper without knowing that the Street Sweeper had the bore diameter identified in element two. Because knowledge of the bore diameter is a necessary element of the offense, we hold that the jury instructions failed to sufficiently apprise the jury of the

government's burden. See Pereyra-Gabino, 563 F.3d at 328. Accordingly, White's conviction for possession of an unregistered firearm is reversed.

-13-

## III. Conclusion

In addition to affirming the unregistered firearm conviction, the panel (1) reversed White's conviction for possession of a stolen firearm due to insufficient evidence proving White knew or had reasonable cause to believe the Romarm Draco was stolen, and (2) upheld the submission of evidence at trial that White was a subject of law enforcement's investigation of a series of violent crimes. White, 824 F.3d at 789, 792. We agree with the panel's sound reasoning supporting its reversal of the stolen firearm conviction, and we therefore reinstate Part II of the panel opinion. Because both convictions are reversed and remanded, we decline to address White's challenge to the evidentiary ruling in his earlier trial. Thus, Part IV of the panel opinion—which affirmed the evidentiary ruling—remains vacated.

In sum, White's convictions for possession of an unregistered firearm and for possession of a stolen firearm are reversed. We remand for further proceedings consistent with this opinion.

———————————————

-14-