**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Marvin Edward MAINS, Defendant–Appellant.**

**No. 93–4132.**

United States Court of Appeals, Tenth Circuit.

Aug. 19, 1994.

---

Scott M. Matheson, Jr., U.S. Atty., Stanley H. Olsen, Asst. U.S. Atty., Salt Lake City, Utah, for plaintiff-appellee.

Bradley P. Rich of Yengich, Rich and Xaiz, Salt Lake City, Utah, for defendant-appellant.

Before SEYMOUR, Chief Judge, McKAY and BALDOCK, Circuit Judges.

BALDOCK, Circuit Judge.

Defendant Marvin Edward Mains appeals his convictions for possession of cocaine with intent to distribute, 21 U.S.C. § 841(a)(1), (b)(1)(C), felon in possession of a firearm, 18 U.S.C. § 922(g)(1), and possession of an unregistered firearm, 26 U.S.C. §§ 5845(a), 5861(d), claiming that the district court erroneously denied his motion to suppress and also alleging insufficient evidence to support each of his three convictions. We have jurisdiction under 28 U.S.C. § 1291.

At approximately 10:00 p.m. on October 1, 1991, Ron Benson, Rodney Bartel, Kathy Crawford, Stephen Metcalf, and Arthur Street, parole officers of the Utah Department of Corrections, went to Defendant's residence in the Woodhaven Apartments. Defendant was known to the parole officers, as he had been previously incarcerated at the Utah State Prison, but he was not on parole on October 1, 1991 and he was not the object of the officers' visit. The officers' purpose in going to Defendant's apartment was to look for Edward Stokes, a roommate of Defendant's, who was suspected of violating the conditions of his parole. The parole officers had been told by an informant that Stokes was selling drugs with Defendant out of Defendant's apartment.

On a previous occasion when Metcalf had conducted a parole visitation with Stokes, Defendant had informed Officer Metcalf that Stokes slept on his couch. However, when the officers arrived at his apartment, Defendant answered the door and told the officers that Mr. Stokes had moved out of the apartment that day. According to the testimony of the officers, they asked Defendant if they could enter the apartment to look for Mr. Stokes, to which Defendant responded, "Sure, come in."

At trial, Defendant testified that he did not consent to the search but merely called the parole officers' attention to the absence of Mr. Stokes' possessions in the living room area which was visible from the doorway, and further testified that he continually objected to the search of his apartment. Defendant's testimony was supported by testimony of Defendant's girlfriend who stated that she was in the bedroom and heard one of the officers asking if they could come in and look, to which Defendant responded by inquiring whether they had a warrant. According to her testimony, when the officers responded that they did not have a warrant, Defendant told them they could not come in, but they entered anyway. Defendant's testimony was further supported by his upstairs neighbor who testified that although he did not hear the entire conversation, he did hear Defendant tell the parole officers that they could not come in without a warrant.

Once inside the apartment, the officers searched the kitchen and living room for Mr. Stokes and then tried to enter the bedroom. The bedroom door was locked, and Defendant knocked on the door and asked his girlfriend, Lesley Singleton, if she was decent. She responded that she was not, and Defendant asked her to dress and come out of the bedroom, which she did. Officers Benson, Metcalf, and Street testified that Defendant gave them permission to go into the bedroom and did not withdraw his earlier consent to the search. Defendant testified that he was asking Ms. Singleton to come out of the bedroom to witness the illegal search, not to allow the officers to enter. Both Defendant and Ms. Singleton testified that after Ms. Singleton exited the bedroom, the officers pushed Defendant and Ms. Singleton aside and went into the bedroom.

Mr. Stokes was not in the bedroom, but Officer Metcalf observed crutches he knew once belonged to Stokes in the bedroom. Metcalf, who had previously been in the apartment during a parole visitation, knew that the bedroom contained a walk-in closet in which a person could readily hide. Officer Benson opened the closet door and stepped inside at which time he observed scales with white residue on them, a razor, and some

packaging materials on a shelf in the bedroom closet. Immediately after the officers had discovered the materials in the closet, Defendant became visibly nervous and closed the closet door, saying, "no, you can't look in there anymore." Officer Metcalf testified that Defendant then stated, "That stuff is mine, it is not Ed's, you can't look at that stuff." Officers Benson and Metcalf then arrested Defendant for possession of drug paraphernalia in violation of Utah law. *See* Utah Code Ann. § 58–37a–5. Upon Defendant's arrest, officers conducted a pat down and discovered a loaded firearm concealed in his pocket as well as $300 dollars cash.

Officer Benson then returned to the closet to search for Mr. Stokes, whom he suspected was hiding under a blanket on the closet floor. When Officer Benson removed the blanket, he discovered several guns.

Officer Street then entered the bedroom to help secure Defendant. Officer Street took Defendant into the living room but returned with Defendant into the bedroom because Defendant wanted to witness the search. Officer Street searched the bed where Defendant was to be seated and found a sawed-off shotgun. Officer Street then searched the bathroom for Mr. Stokes. While searching the bathroom, he opened a cabinet under the sink to look for Mr. Stokes and discovered a substance that appeared to be narcotics.

One of the officers read Defendant his Miranda rights while Defendant was still in his apartment. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). As Officer Benson was taking Defendant to jail, Defendant told Officer Benson that he wanted to talk to him so Officer Benson took Defendant to the parole office, where Benson again read Defendant his Miranda rights. Defendant said that he understood his rights and began to answer Benson's questions. Defendant indicated that Stokes was still living in Defendant's apartment and that Stokes had told him to tell any parole officers that came by that he had moved. He also stated that the guns found at the apartment were not his, specifically stating, "They're not mine and there is only two of us that live there, and if they're not mine, then figure out whose they are." De-

fendant further stated that the drugs found in the apartment were his and that he was just getting ready to use them before the parole officers arrived. When asked why he had the gun in his pocket, he responded that he had picked it up when the officers knocked on the door so the officers would not see it and also stated that he had picked up the gun previously for a drug deal earlier that day.

Officer Benson spoke to Defendant again two days later at Defendant's request. At that time, after Defendant was again Mirandized, Defendant explained that he and Stokes had cut off the shotgun barrel the morning of October 1, 1991, before the parole officers arrived. During this conversation, Defendant again admitted that the drugs were his and he was getting ready to use them.

Defendant was charged in a four-count indictment with: (1) possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); (2) carrying a firearm—*i.e.*, a .38 caliber semi-automatic pistol, in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c); (3) felon in possession of a firearm—*i.e.*, a .38 caliber semi-automatic pistol in violation of 18 U.S.C. § 922(g)(1); and (4) possession of an unregistered firearm—*i.e.*, a Higgins 12–gauge sawed-off shotgun, in violation of 26 U.S.C. § 5861(d). Defendant filed a motion to suppress all the evidence found in his apartment, asserting that he did not consent to the search. After the district court denied his motion to suppress, a jury convicted Defendant of counts one, three, and four and acquitted him of count two—*i.e.*, carrying a firearm in relation to a drug trafficking crime. Defendant then appealed his conviction to this court, challenging the denial of his motion to suppress and the sufficiency of the evidence for his three convictions. On February 5, 1993, in an unpublished opinion, this court remanded the case for the district court to make factual findings under Fed. R.Crim.P. 12(e) with regard to the motion to suppress. *See United States v. Mains*, 92–4066, 1993 WL 26827 (10th Cir. Feb. 5, 1993). On remand, the district court affirmed its denial of the motion to suppress, finding that

Defendant voluntarily consented to the search of the apartment and again to the bedroom, and did not withdraw his consent until officers discovered the alleged drug paraphernalia in the bedroom closet. The district court further found that the subsequent search was a search incident to Defendant's arrest.

We first review the district court's denial of Defendant's motion to suppress. Defendant asserts that his lack of consent to the search requires reversal of the district court's suppression denial, and further asserts that even if he did consent, the officers' search exceeded the scope of his consent.

■ In reviewing the denial of a motion to suppress, we review a district court's factual determinations for clear error and ultimate determinations of reasonableness under the Fourth Amendment de novo. *United States v. Morales–Zamora*, 974 F.2d 149, 151 (10th Cir.1992). Because credibility of witnesses at a suppression hearing is critical to a district court's consent determination, we must not substitute our judgment for that of the district court. *United States v. Dewitt*, 946 F.2d 1497, 1500 (10th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1233, 117 L.Ed.2d 467 (1992). "Under the clearly erroneous standard, the trial court will not be reversed unless its findings were without factual support in the record, or if after reviewing all the evidence, the appellate court is left with the definite and firm conviction that a mistake has been made." *United States v. Butler*, 966 F.2d 559, 562 (10th Cir.1992).

■ Whether Defendant consented to the search turned on whether the district court believed the parole officers or believed Defendant, Defendant's girlfriend and Defendant's neighbor. The district court's findings make it clear that he found the parole officers' testimony more credible. Thus, because the testimony of the parole officers clearly supports the district court's finding of consent and because we will not substitute our judgment of credibility for that of the trial court, we will not disturb the district court's finding of consent.

■ Defendant also asserts that the parole officers exceeded the scope of Defen-

dant's consent by looking further than the living room for Stokes. The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness—*i.e.*, what a reasonable person would have understood by the exchange between the officer and the suspect. *Florida v. Jimeno*, 500 U.S. 248, 248–52, 111 S.Ct. 1801, 1802–04, 114 L.Ed.2d 297 (1991); *United States v. Langston*, 970 F.2d 692, 698 (10th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 439, 121 L.Ed.2d 358 (1992). The scope of consent is generally defined by the expressed object of the search. *Jimeno*, 500 U.S. at 251–52, 111 S.Ct. at 1804.

■ Because Defendant consented to a search for Stokes, he consented to a search of any area in the apartment large enough to accommodate Stokes. Thus, pursuant to Defendant's consent, the parole officers were permitted to look in the walk-in closet. Moreover, although Defendant attempted to withdraw his consent, once the drug paraphernalia was discovered and Defendant was arrested, the parole officers were entitled to conduct a protective sweep of spaces in the apartment which may harbor an individual posing a danger to the officer or others. *Maryland v. Buie*, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990) (without probable cause, police may conduct a search incident to an arrest of a person in a residence of "spaces immediately adjoining the place of arrest;" with reasonable suspicion that "the area [to be] swept harbor[s] an individual posing a danger to the officer or others," police may conduct a warrantless protective sweep of other parts of the premises in which the arrest occurs). Thus, the second search of the closet to look under the blanket and the search of the bathroom were justified.

■ Defendant next argues that there was insufficient evidence presented at trial to sustain each of his three convictions. Evidence is sufficient to support a criminal conviction if a reasonable jury could find the defendant guilty beyond a reasonable doubt, given the direct and circumstantial evidence, along with reasonable inferences therefrom, taken in a light most favorable to the government.

*United States v. Ray,* 973 F.2d 840, 841–42 (10th Cir.1992).

In order to sustain a conviction for possession with intent to distribute under 21 U.S.C. § 841(a)(1), the government must prove that the defendant: (1) possessed a controlled substance, (2) knew he possessed a controlled substance, and (3) intended to distribute the controlled substance. *United States v. Hager,* 969 F.2d 883, 888 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 437, 121 L.Ed.2d 357 (1992). Possession of a controlled substance may be either actual or constructive, and constructive possession occurs when a person "knowingly has ownership, dominion or control over the narcotics and the premises where the narcotics [were] found." *Id.*

Upon review of the record, we find an abundance of evidence from which a reasonable jury could have found Defendant guilty beyond a reasonable doubt of possession with intent to distribute. Defendant stipulated at trial that the substance found in his bathroom cabinet was cocaine and that the residue on the scales was cocaine. Defendant lived in the apartment and occupied the bedroom where all of the paraphernalia was discovered. He admitted to Officer Benson that the drugs found in the bathroom and the paraphernalia found in the closet belonged to him, and further admitted to conducting a drug deal earlier that day which was confirmed by the large amount of cash Defendant was carrying.

We also reject Defendant's argument that the evidence was insufficient to convict him of possession with intent to distribute because there was evidence tending to show that the drugs could have belonged to either Stokes or Ms. Singleton. "Although it is possible to hypothesize from circumstantial evidence that another individual may have possessed the cocaine found at the apartment, the evidence required to support a verdict need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt." *United States v. Parrish,* 925 F.2d 1293, 1297 (10th Cir.1991).

In order to sustain a conviction for felon in possession of a firearm under 18 U.S.C. § 922(g)(1), the government must prove that: (1) the defendant was convicted of a felony; (2) the defendant thereafter knowingly possessed a firearm; and (3) the possession was in or affecting interstate commerce. *United States v. Shunk,* 881 F.2d 917, 921 (10th Cir.1989). Defendant stipulated to the first and third elements at trial. As to the second element, the jury could easily conclude that Defendant had actual possession of the gun as it was found in his pocket. Although Defendant claimed that he was not the owner of the gun and that he had no knowledge of the gun until he saw it and slipped it into his pocket when police arrived, this explanation, even if believed by the jury, would not exonerate Defendant. Section 922(g)(1) requires possession, not ownership of the gun, *see* 18 U.S.C. § 922(g)(1), and the only knowledge required for a § 922(g) conviction is knowledge that the instrument possessed is a firearm, *see United States v. Laymon,* 621 F.2d 1051, 1054 (10th Cir.1980) (only knowledge required by 18 U.S.C.App. § 1202(a) (predecessor to 18 U.S.C. § 922(g)) for felon in possession of a firearm is that individual know the instrument possessed is a firearm). Thus, upon review of the record, it is apparent that there was evidence at trial from which a reasonable jury could have found Defendant guilty beyond a reasonable doubt of felon in possession of a firearm.

We also reject Defendant's argument that because the jury acquitted him of using or carrying a firearm in relation to a drug trafficking offense, 18 U.S.C. § 924(c), the jury should have also acquitted him of violating § 922(g) because both offenses require knowing possession of a firearm. We reject this argument because there are other elements upon which the jury could have based its acquittal; for example, the jury could have decided that, although Defendant knowingly possessed a firearm when arrested, he did not possess the firearm *during a drug trafficking offense.*

Defendant also challenges his conviction for possession of an unregistered firearm, 26 U.S.C. § 5861(d). Specifically, Defendant claims the evidence was insufficient to prove

(1) he possessed a sawed-off shotgun, and (2) he knew the sawed-off shotgun "was a dangerous device that should have been registered." On February 10, 1994, we abated this appeal pending the Supreme Court's decision in *Staples v. United States,* —— U.S. ——, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994). That case has now been decided and is dispositive of the second issue raised by Defendant.

▪ We easily dispose of Defendant's first claim—*i.e.,* that the evidence was insufficient to prove he possessed a sawed-off shotgun. At trial, the government presented evidence that Defendant rented the apart-ment and admitted to sleeping in the room and bed where the shotgun was discovered. The evidence also indicated that Defendant admitted to Officer Benson he and Stokes had sawed-off the shotgun the morning of the search. We conclude that from this evidence, a reasonable jury could find Defendant had dominion and control over the shotgun, thereby establishing constructive possession. *See United States v. Sullivan,* 919 F.2d 1403, 1430 (10th Cir.1990) (constructive possession whereby defendant exercises dominion and control over an object sufficient to support 26 U.S.C. § 5861(d) conviction).

We now turn to Defendant's claim that the evidence was insufficient to prove he knew the sawed-off shotgun was a "dangerous device of such type as would alert one to the likelihood of regulation." Although we have never held the government must prove a defendant knew the weapon he possessed was a dangerous device subject to regulation, the Supreme Court recently held in *Staples* that the government must prove a defendant knew the weapon he possessed had the characteristics which made it a statutory firearm. *Id.* at ——, 114 S.Ct. at 1804.

▪ As an initial matter, we conclude the district court's jury instructions properly required the jury to find Defendant knew the particular characteristics that made his weapon a statutory firearm. *See id.* The weapon at issue in this case was a sawed-off shotgun. The statute requires a sawed-off shotgun to have the following characteristics: (1) "an overall length of less than 26 inches," or (2) "a barrel ... less than 18 inches in length." *See* 26 U.S.C. § 5845(a). The court instructed the jury in pertinent part:

### Instruction No. 43

The offense charged in Count 4 of the Indictment has two essential elements, as follows:

*First:* That the defendant at the time and place charged in the Indictment *knowingly possessed a shotgun with a barrel length of less than 18 inches or an overall length less than 26 inches;*

(emphasis added).

Under this instruction, the jury was required to find that Defendant "knowingly possessed" a shotgun with the prescribed physical characteristics. " 'Knowingly possessed' logically means 'possessed and knew that he possessed.' " *Staples,* —— U.S. at ——, 114 S.Ct. at 1806 (Ginsburg, J., concurring). Therefore, under the court's instructions, the jury was required to find that Defendant (1) possessed a sawed-off shotgun with a barrel length of less than eighteen inches or an overall length less than twenty-six inches, and (2) knew he possessed a sawed-off shotgun with a barrel length of less than eighteen inches or an overall length less than twenty-six inches. Thus, in accord with *Staples,* Instruction No. 43 properly required the jury to find Defendant knew the particular characteristics which made his sawed-off shotgun a statutory firearm. *See id.* at ——, 114 S.Ct. at 1804.

▪ Additionally, we note the district court also instructed the jury that "it is not necessary for the government to prove that the defendant knew that the weapon in his possession was a firearm within the meaning of the statute or that he knew that registration was required." *See* Instruction No. 47. We do not read this instruction as relieving the government from proving Defendant's knowledge of the characteristics of the sawed-off shotgun. Rather, when read in conjunction with Instruction No. 43, Instruction No. 47, consistent with *Staples,* merely informs the jury that the government was not required to prove that Defendant knew the sawed-off shotgun in his possession was a prohibited firearm as defined under 26

U.S.C. § 5845(a), so long as Defendant knew the weapon had a barrel length of less than eighteen inches or an overall length less than twenty-six inches. *See Staples,* —— U.S. at ——, 114 S.Ct. at 1805 n. 3 (*mens rea* requires only knowledge of the facts that make conduct illegal; ignorance of the law itself is no defense to criminal prosecution) (Ginsburg, J., concurring).

▮▮▮ Having concluded the district court properly instructed the jury in accordance with *Staples,* we further conclude the government presented sufficient evidence for a reasonable jury to find Defendant knew the characteristics which made his sawed-off shotgun a statutory firearm. Again, the characteristic at issue here is the length of the barrel or the overall length of the gun. The record reflects a stipulation that Defendant's sawed-off shotgun had a barrel length of fourteen and one-eighth inches—approximately four inches shorter than the statutory minimum. Moreover, the record further indicates that Defendant himself personally assisted in sawing off the shotgun. From this evidence, the jury could reasonably conclude Defendant knew his sawed-off shotgun had a barrel length of less than eighteen inches.

**AFFIRMED.**[1]

1. The parties' motion to submit additional briefs    is denied.