**UNITED STATES COURT OF APPEALS**
Tenth Circuit
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80294
(303) 844-3157

Patrick J. Fisher, Jr.
Clerk

Elisabeth A. Shumaker
Chief Deputy Clerk

July 9, 1996

**TO:** ALL RECIPIENTS OF THE CAPTIONED ORDER AND JUDGMENT

**RE:** 95-3288 USA v. Mack
June 19, 1996 by The Honorable John C. Porfilio

Please be advised of the following correction to the captioned decision:

The order and judgment is amended to read "the judgment of the district court is affirmed in part and reversed in part and remanded for resentencing."

Enclosed is a copy of the amended order and judgment.

Very truly yours,

Patrick Fisher, Clerk

Beth Morris
Deputy Clerk

encl.

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

TRACY E. MACK,

     Defendant-Appellant.

No. 95-3288
(D.C. No. 94-CR-10124)
(District of Kansas)

**ORDER AND JUDGMENT**[*]

Before **PORFILIO**, **HOLLOWAY**, and **MURPHY**, Circuit Judges.

Tracy E. Mack appeals his convictions for possession of crack cocaine, 21 U.S.C. § 844; felon in possession of a firearm, 18 U.S.C. § 922(g)(1); and use of a firearm in relation to a drug trafficking crime,18 U.S.C. § 924(c). Mr. Mack claims the evidence presented at trial was insufficient to convict him of any of the charges for which he was found guilty. He also argues the court erred in instructing the jury regarding the § 924(c)

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

count.  In light of *Bailey v. United States*, 116 S.Ct. 501 (1995), the government concedes Mr. Mack's § 924(c) conviction should be vacated.  Concluding the evidence was sufficient for a reasonable jury to find Mr. Mack guilty of crack cocaine possession and of possession of a firearm as a convicted felon, we affirm the remaining convictions.

This case involves two separate transactions, the first occurring on June 16, 1994, and the second on November 30, 1994.  The first was the product of information that Mr. Mack was selling drugs out of a residence in Wichita, Kansas.  That information led to execution of a search warrant on June 16.  As officers approached the house, they saw Mr. Mack outside on the front porch.  Mack spotted the police and began to run.  He was chased for several blocks and arrested.  In the house, police discovered another suspect, Alan Hall, hiding in a closet adjoining two bedrooms.  They also found two crack pipes and a plastic bag with cocaine residue.  A .38 caliber revolver loaded with six rounds of ammunition was found placed between two mattresses and the box springs of a bed in one bedroom.  Also between the mattresses and box springs was a note that read: "Baby, I left your stuff up under the second box spring and your $40, love Cynthia.  Gone to bingo." Cynthia was later determined to be Cynthia Jackson, Mr. Mack's girlfriend and an occupant of the house.  Although the house was leased to Ms. Jackson, at the time of the search she was not present.

Also found between the mattresses were two photographs of an infant and a woman.  The first photo was inscribed: "To my daddy Big Mack from son Little Mack,

with love, Tracy E. Mack, Jr., five days old." The second photo was inscribed "Tracy E. Mack, Jr., five days old, with love."

In the bedroom, officers discovered two photo I.D.'s belonging to Mr. Mack; a utility bill for the residence addressed to Mr. Mack and dated June 14, 1994; and a letter to Mr. Mack from Cynthia Jackson, postmarked June 13, 1994. The letter, mailed three days earlier, asks Mr. Mack: "How's business been going for you?... I don't care who you get it from but I want a $50 sack when I come home and have it there by the time I get there."

The second arrest involved a separate incident occurring on November 30, 1994. On that evening, patrol officers were making routine rounds when they spotted two men running up the street. One of the men appeared to be chasing the other man with what looked like a shotgun.

After realizing the police were chasing him, the man, later identified as Mr. Mack, slowed to a walk, dropped the "shotgun", and threw something to the ground. Later, searching for the discarded items, the officers discovered a plastic bag containing a white substance. The substance field tested positive for cocaine, and Mr. Mack was arrested. Officers also found the "shotgun" and discovered it was only a stick.

The officers' trial testimony concerning the plastic bag was inconsistent. Officer Barnes testified he observed Mr. Mack "drop something white in color, or what appeared to be a plastic baggy, from his left side.... It looked shiny in color or what would be

plastic." He stated when the item fell to the ground "it hit like a rock," rather than

floating down as if the bag were empty. The officer stated:

Q: And you're absolutely sure that you saw a baggy drop from his hands?

A: What appeared to be a baggy or something light in color.

Q: But you're sure?

A: I'm sure.

He also testified he stated to Officer Darling that "Mr. Mack dropped what appeared to be

a plastic baggy back up the side walk between these two trees" and instructed the officer

to retrieve the plastic bag.

Officer Darling, however, did not recall being told to look specifically for the bag.

He testified Officer Barnes told him to look for the weapon. When Darling returned with

the plastic bag, he remembers Barnes mentioning Mr. Mack dropped it along with the

weapon. A third policeman, Officer Noblitt, also testified that Barnes began discussing

the bag after Darling went off to look for the weapon, rather than before.

The jury returned a verdict of guilty to Count 1, for the lesser included offense of

simple possession, and guilty to Counts 3 and 4, but could not reach a verdict on Count 2.

The court declared a mistrial on that count, and the government ultimately dismissed the

charge. The government now concedes there was insufficient evidence to have convicted

Mr. Mack of Count 4 and recommends vacating that conviction.[1] Thus, Mr. Mack's

---

[1]The government originally argued we should remand for consideration of whether the defendant's possession of the gun could enhance his other sentences. Apparently recognizing the

remaining convictions are for simple possession of crack cocaine stemming from his November 30, 1994 arrest and for possession of a firearm by a convicted felon arising out of his constructive possession of a .38 revolver on June 16, 1994.

We review the record for sufficiency of the evidence *de novo*. "Evidence is sufficient to support a conviction if a reasonable jury could find the defendant guilty beyond a reasonable doubt, given the direct and circumstantial evidence, along with reasonable inferences therefrom, taken in a light most favorable to the government." *United States v. Mains*, 33 F.3d 1222, 1227 (10th Cir. 1994). In reviewing the evidence, "we are not permitted to weigh conflicting evidence or consider witness credibility as that duty is exclusively delegated to the jury." *United States v. Davis*, 965 F.2d 804, 811 (10th Cir. 1992), *cert. denied*, 507 U.S. 910 (1993). Thus, any conflicts in evidence must be resolved in favor of the government. *United States v. Williamson* 53 F.3d 1500, 1516 (10th Cir.), *cert. denied*, 116 S.Ct. 218 (1995).

Mr. Mack argues the conflicting evidence of whether Officer Barnes actually saw him discard the cocaine left the jury with insufficient evidence with which to convict. Nonetheless, it is indisputable the government presented evidence to the jury that Mr. Mack was seen on November 30, 1994, abandoning a plastic bag of white powder that tested positive for crack cocaine.

---

futility of that contention, the government abandoned it at oral argument.

Although the testimony given by Officers Darling and Noblitt conflicts in a minor detail with that of Officer Barnes, the discrepancy gives rise only to a test of credibility that is solely within the province of the jury.  We may not evaluate either the credibility of witnesses or the weight of the evidence they provided.  To the contrary, under *Williamson*, we are bound to resolve any evidentiary conflicts in favor of the government and assume the jury found Officer Barnes' testimony credible.

To prove Mr. Mack was guilty of Count 3, the government had to establish three essential elements: (1) The defendant previously had been convicted of a felony; (2) Thereafter, the defendant knowingly possessed a firearm, and (3) the possession of the firearm was in or affecting commerce.  *Mains*, 33 F.3d at 1228.  In this appeal, Mr. Mack claims the government failed to prove the second element of the offense.

Although possession is an element of the offense, the government is not required to prove actual possession.  "[P]ossession in fact is not a prerequisite of [] conviction [under § 922(g)], constructive possession being sufficient."  *United States v. Cardenas*, 864 F.2d 1528, 1533 (10th Cir.), *cert. denied*, 491 U.S. 909 (1989).  In this case, the government carried its burden of proof by showing Mr. Mack knowingly held ownership, dominion, or control over the gun and the premises where it was found.  *United States v. Mills*, 29 F.3d 545, 549 (10th Cir. 1994).

In cases where the defendant has exclusive possession of the premises, dominion, control, and knowledge may be inferred.  *Id.*  However, this case involves joint

occupancy by Mr. Mack and Ms. Jackson. Therefore, to prove the defendant's constructive possession, the government was required to show some connection or nexus between Mr. Mack and the firearm. Thus, the conviction depends on whether "there [is] some evidence supporting at least a plausible inference that the defendant had knowledge of and access to the weapon...." *Mills*, 29 F.3d at 550 (quoting *United States v. Mergerson*, 4 F.3d 337, 349 (5th Cir. 1993), *cert. denied*, 114 S.Ct. 1310 (1994)). After reviewing the record, we conclude the government provided sufficient evidence to the jury to support a plausible inference that Mr. Mack constructively possessed the .38 revolver.

The gun was found hidden in a room that also contained personal items belonging to Mr. Mack and inscribed photographs of Mr. Mack's child. The note apparently written to Mr Mack by Ms. Jackson stating: "Baby, I left your stuff up under the second box springs ...." implies the act of storing items under the mattress was a common practice known to Mr. Mack.

Mr. Mack argues it is significant that the bed consisted uniquely of two sets of mattresses and two box springs. The note was under the second mattress, while the gun and photos of Tracy Mack, Jr. were found under the first mattress. This, according to Mr. Mack, is an exculpatory fact, as if the bed were some sort of filing system and the gun was not in Mr. Mack's assigned place because the note was under a different mattress.

The jury apparently saw little significance in the note's placement, and neither do we. It is plausible the jury simply determined the bed, albeit uniquely configured, was one bed and the items hidden within it belonged to Mr. Mack.

Relying on *Mills*, Mr. Mack argues because he shared the residence in joint occupancy with Ms. Jackson and because another individual, Allan Hall, was found in the closet of the house, the evidence was insufficient to establish he possessed the revolver. However, in *Mills*, the evidence was insufficient to support a finding of possession because the gun was found in the drawer of a dining room table owned by someone other than the defendant. The table was in a common area, and testimony was offered suggesting someone else placed the gun in the table drawer without the defendant's knowledge.

Here, in contrast, the gun was found in a private bedroom used by Mr. Mack. It was hidden under the mattress in that room along with items clearly belonging to only Mr. Mack. Those items are of a personal nature suggesting his exclusive possession of the contents of the room at the time the gun was found. Moreover, not only does that evidence establish Mr. Mack's possession, it also excludes the possession of either Ms. Jackson or Mr. Hall. When viewed in its entirety and in the light most favorable to

the government, the evidence demonstrates a nexus between the gun and Mr. Mack and supports his conviction.

The judgment of the district court is **AFFIRMED IN PART** and **REVERSED IN PART** and **REMANDED FOR RESENTENCING.**

ENTERED FOR THE COURT

John C. Porfilio
Circuit Judge